**In the Matter of K.R.**

**No. 04–01–00594–CV.**

Court of Appeals of Texas, San Antonio.

June 12, 2002.

Michael D. Robbins, Attorney At Law, San Antonio, for Appellant.

Enrico B. Valdez, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

CATHERINE STONE, Justice.

K.R. appeals the trial court's order committing her to the Texas Youth Commis-sion ("TYC"). In her sole point of error, K.R. contends that the trial court erred in overruling her motion for new trial because the evidence is factually insufficient to justify the commitment to TYC. We overrule K.R.'s contention and affirm the trial court's order.

### STANDARD OF REVIEW

The trial court has broad discretion to fashion an appropriate disposition when a child has been adjudicated to be a delinquent. *In re T.K.E.*, 5 S.W.3d 782, 784 (Tex.App.-San Antonio 1999, no pet.). The trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Id.* Factual sufficiency of the evidence is a relevant factor in determining whether the trial court abused its discretion. *In re J.S.*, 993 S.W.2d 370, 372 (Tex. App.-San Antonio 1999, no. pet.). When reviewing a factual sufficiency challenge in a juvenile case, we consider the totality of the evidence to determine whether the evidence supporting the finding is so weak or the evidence contrary to the finding is so overwhelming that it is clearly wrong and unjust. *In re H.G.*, 993 S.W.2d 211, 213 (Tex.App.-San Antonio 1999, no pet.).

### DISCUSSION

In order to commit a juvenile to TYC, the trial court must find and state in its order that (1) it is in the child's best interest to be placed outside the child's home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home; and (3) the child's home cannot provide the quality of care and level of support and supervision the child needs. TEX. FAM.CODE ANN. § 54.04(i) (Vernon Supp.2002). K.R. concedes that the trial court verbally made the requisite findings at the hearing on

June 11, 2002, and stated them in the commitment order; however, K.R. contends that the evidence is factually insufficient to support the findings.

In her brief, K.R. relies heavily on the testimony of three witnesses: K.R., her mother, and her current probation officer. K.R. was diagnosed as being bi-polar, and each of these witnesses testified regarding the dramatic improvement in K.R.'s behavior since she began receiving a different treatment for her mental condition. K.R. asserts in her brief, "Despite her admittedly bad history, it is obvious that a new child was born early in 2001. The court apparently looked to Appellant's history in making its determination. In so doing, the court ignored [the] fact that Appellant had high quality care and support at home, and could now meet her probation conditions."

In recommending commitment to TYC, the State informed the trial court that this was K.R.'s fourth request for probation in juvenile matters and that a fourth probation would send a negative message that there are no consequences for chronic misbehavior. The matter before the court for disposition involved K.R.'s assault on a corrections officer employed at the Bexar County Juvenile Corrections Treatment Center (otherwise known as "Southton"). In pronouncing its disposition, the trial court relied on a psychological evaluation of K.R. prepared on April 26, 2001, a few months before the hearing. That report detailed K.R.'s "extensive history of involvement with the Juvenile Justice System," which began in December of 1998 and included referrals for numerous violations in 1999, 2000, and 2001. The report stated that K.R. "displayed a tendency to minimize the seriousness of her misbehaviors" and that K.R. "expressed no remorse for her juvenile offenses and frequently bragged about her involvement with the Juvenile Justice System." The report noted that K.R. made numerous attempts to circumvent Southton's policies and procedures, "often manipulating her mother into assisting her." The report also indicated that K.R. had a history of severe relational problems with her brother and sister, "both of whom she has threatened with weapons on one or more occasions." The report stated that K.R. did not accept much personal responsibility for her behavior but that she knows right from wrong in a general sense and fully understands the consequences of delinquent behavior. K.R. denied that her conduct with regard to the assault on the corrections officer was intentional. K.R. admitted to relatively frequent use of marijuana and experimentation with alcohol. K.R. admitted to having a homicidal ideation, indicating that she had made plans to kill a teacher because he told her probation officer "some bad things" and further claimed that she would have followed through with her plans if she had not subsequently been "locked up." The report recommended that K.R. be placed "in a secure, stable, and structured environment away from negative peer influences and opportunities for substance abuse where she would receive additional supervision over [her] behavior." The report concluded that K.R. needed to be placed "at a facility that is well equipped to deal with highly disruptive and manipulative individuals with severe anger control problems and physically aggressive behavioral outbursts."

At the motion for new trial, a letter from another psychiatrist who had treated K.R., dated March 9, 2001, was admitted into evidence. In that letter, the psychiatrist reported that K.R. was becoming more stable and that a return to a TYC facility would likely result in the worsening of K.R.'s condition. Another letter from the program director at the facility that treat-

ed K.R., dated March 9, 2001, also was admitted into evidence at the hearing on the motion for new trial. In that letter, the program director reported that K.R. had exhibited improved mood stability. The program director concluded that K.R. would be able to further benefit from appropriate psychiatric management of her disorder along with the right educational resources.

Having reviewed all of the evidence presented, we conclude that the evidence is factually sufficient to support the trial court's findings. K.R. was requesting a fourth probation after an extensive juvenile history. K.R. violated her previous probation and her behavior made the prior placement at Southton unsuccessful. The most recent psychological report indicated that K.R. was able to manipulate her mother to assist her in violating Southton's polices and the report contained information indicating a need to protect the public from K.R. Therefore, the trial court did not abuse its discretion in committing K.R. to TYC.

## CONCLUSION

The trial court's order is affirmed.