**In the Matter of K.T.**

No. 04–02–00043–CV.

Court of Appeals of Texas,
San Antonio.

March 12, 2003.

Joel Richardson, Attorney At Law, San Antonio, for Appellant.

Michael P. Miklas, III, Attorney At Law, San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, and KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by SARAH B. DUNCAN, Justice.

K.T. appeals the trial court's judgment, which found that K.T. engaged in delin-

quent conduct by possessing marijuana and committed him to the Texas Youth Commission until his twenty-first birthday or until TYC orders his release. K.T. contends the evidence is insufficient to support the adjudication portion of the order and the trial court abused its discretion in committing him to TYC. On our own motion, we have taken this appeal en banc to clarify the standard for reviewing orders committing a juvenile to TYC for an indeterminate sentence.

All members of this Court agree the trial court's judgment should be affirmed. But we disagree on the proper standard of review. A minority of the members of the court would follow earlier court of appeals' opinions, including opinions of this court, which hold that, although a juvenile disposition order is reviewed under an abuse of discretion standard, the trial court's findings of fact are reviewed for legal and factual sufficiency. *See, e.g., In re K.R.*, 82 S.W.3d 660, 661 (Tex.App.-San Antonio 2002, no pet.). A majority of the court disagrees. We hold the order must be reviewed under an abuse of discretion standard divorced from legal and factual sufficiency standards. We must therefore defer to the trial court's findings of fact but determine de novo whether the facts supported by the record justify the trial court's disposition order in light of the purposes of Texas' Juvenile Justice Code. Therefore, to the extent of the conflict, we overrule *K.R.* and similar cases.

## OVERVIEW OF APPLICABLE LAW

Before delving into the particular facts and issues involved in this appeal, we believe it would be helpful to provide a brief overview of the applicable law.

Under Texas' Juvenile Justice Code, a juvenile proceeding may consist of an adjudication hearing and a disposition hearing. *See* TEX. FAM.CODE ANN. § 54.04(a) (Vernon

2002). At the adjudication hearing, the court or jury must determine whether the juvenile has "engaged in delinquent conduct or conduct indicating a need for supervision." *Id.* at § 54.03(a). "[D]isposition is a euphemism for sentencing[ ] and is used to honor the non-criminal character of the proceedings." *In re C.S.*, 804 A.2d 307, 309 n. 2 (D.C.App.2002).

Once it is decided that a juvenile has "engaged in delinquent conduct or conduct indicating a need for supervision," "the court shall dismiss the child and enter a final judgment without any disposition" unless the court or jury finds "the child is in need of rehabilitation or the protection of the public or the child requires that disposition be made." TEX. FAM.CODE ANN. § 54.04(c) (Vernon 2002). Only if this required finding is made may the court proceed to disposition. *See id.*

The Juvenile Justice Code sets forth a range of permissible dispositions, including probation, *id.* at § 54.04(d)(1); enjoining contact between the child and any adult who has contributed to the child's delinquent conduct, *see id.* at 54.041(a)(2); ordering the child to participate in psychological counseling, *see id.* at § 54.0407; and commitment to TYC with or without a determinate sentence, *see id.* at § 54.04(d)(2)-(3). Unless the equivalent of an indictment is obtained under section 53.045, a court may not commit a juvenile to TYC without a determinate sentence for a misdemeanor offense unless "the requirements of Subsection (s) or (t) are met." *Id.* § 54.04(d)(2). Subsection (s) permits commitment to TYC under these circumstances if:

(1) the child has been adjudicated as having engaged in delinquent conduct violating a penal law of the grade of misdemeanor on at least two previous occasions;

(2) of the previous adjudications, the conduct that was the basis for one of the adjudications occurred after the date of another previous adjudication; and

(3) the conduct that is the basis of the current adjudication occurred after the date of at least two previous adjudications.

*Id.* § 54.04(s).

Regardless of the disposition selected, "[t]he court shall state specifically in [its disposition] order its reasons for the disposition and shall furnish a copy of the order to the child." *Id.* at § 54.04(f); *see, e.g., In re J.L.R.*, No. 04–99–00217–CV, 2000 WL 424033, at 2 (Tex.App.-San Antonio Apr.19, 2000, no pet.) (not designated for publication); *In re T.R.W.*, 533 S.W.2d 139, 140–41 (Tex.Civ.App.-Dallas 1976, no writ), *overruled on other grounds, K.K.H. v. State,* 612 S.W.2d 657 (Tex.Civ.App.-Dallas 1981, no writ); *but see In re J.C.C.,* 952 S.W.2d 47, 49 (Tex.App.-San Antonio 1997, no writ) (holding that a court's failure to include required findings in its order was harmless because the court's oral findings were unambiguous and clearly identifiable). "Specification of the reasons for the disposition in an order and furnishing a copy to the child, as subdivision (f) requires, provide assurance that the child and his family will be advised of the reasons for commitment and will be in a position to challenge those reasons on appeal. The appellate court may then review the reasons recited and determine whether they are supported by the evidence and whether they are sufficient to justify the particular disposition ordered." *In re T.R.W.*, 533 S.W.2d at 141.[1]

If commitment to TYC is ordered, the court must also include in its order the following three findings:

(1) it is in the child's best interests to be placed outside the child's home;

(2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

(3) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM.CODE ANN. § 54.04(i)(1) (Vernon 2002). The section 54.04(i) findings requirement, which was added in 1993, "derives from federal law," which makes federal monies "available to the states for certain children who are placed outside their homes, in foster homes or elsewhere, but only upon judicial findings that removal from the home is necessary." ROBERT O. DAWSON, TEXAS JUVENILE LAW 179 (5th ed.2000). Although the section 54.04(i) findings are an essential prerequisite to an order committing a juvenile to TYC, neither section 54.04(i) nor any other provision of the Code makes these federally-mandated findings the functional equivalent of the statement of "reasons" required by section 54.04(f) to justify a disposition order. Accordingly, even if the evidence supporting the trial court's section 54.04(i)(1) findings is "scant," other evidence may justify an order committing a juvenile to TYC. *See In re T.K.E.*, 5

---

**1.** Neither a statement of the offense nor a statement of the need for protection of the public and for rehabilitation of the child constitute "a specific statement of reasons for the disposition." *In re T.R.W.*, 533 S.W.2d at 140–41. By requiring the court to state its

"reasons," "the legislature 'meant that the Juvenile Court must set out the rationale of its order....'" *Id.* at 141–42 (quoting *In re J.R.C.*, 522 S.W.2d 579, 583 (Tex.Civ.App.-Texarkana 1975, writ ref'd n.r.e.) (construing similar language in section 54.02(h))).

S.W.3d 782, 785–86 (Tex.App.-San Antonio 1999, no pet.).

In *In re T.K.E.*, T.K.E. pled true to the State's allegation that he sexually assaulted a child by contact by forcing a young male cousin to perform oral sex on him. *Id.* at 783. The trial court adjudicated T.K.E. delinquent and ordered him committed to TYC for a determinate sentence of six years. *Id.* at 783–84. On appeal, T.K.E. challenged the sufficiency of the evidence to support the disposition order. *Id.* at 784. Although noting that "[t]he record in this case does not contain much evidence from either T.K.E. or the State," the court held "[t]he scant evidence that is before us, however, supports the juvenile court's section 54.04(i) findings." *Id.* at 785–86. But the remainder of the court's opinion focuses not on the inquiries mandated by section 54.04(i) but on a much more specific question—where could T.K.E., a repeat sexual offender, receive the best possible treatment? Because a reasonable person could have concluded from the evidence before the juvenile court that that place was TYC, this court affirmed. *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2001, K.T. was pulled over for speeding. The police officer detected a "very, very, very strong odor" of marijuana emanating from the vehicle. After K.T. and two passengers exited the vehicle, it was searched. The search yielded some cigars in boxes, plastic baggies, and three marijuana blunts, which are made by removing the tobacco from a cigar and packing it with marijuana. Two of the blunts were found in a cigar box under the front passenger seat; the third blunt was found in a lidded cup, which was found either in the cup holder immediately to the right of the driver's seat or in the driver's seat. When K.T. emerged from the vehicle, the officer detected an odor of marijuana on

K.T.'s clothing. K.T. and the two passengers were arrested for possession of marijuana.

In its original petition, the State alleged K.T. "knowingly and intentionally possess[ed] a usable quantity of marihuana of two (2) ounces or less," which is a misdemeanor offense "punishable by confinement in jail." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b) (Vernon Supp. 2002). At the ensuing bench trial, the passenger in the front seat of the vehicle, Josephus Duncan, testified that all of the marijuana belonged to him. The trial court found beyond a reasonable doubt that K.T. had been in possession of marijuana and adjudged him to have engaged in delinquent conduct. The court then made the findings required by section 54.04(c)—that K.T. "is in need of rehabilitation and that the protection of the public and [K.T.] requires a disposition to be made." Considering "the prospect of adequate protection of the public and what services the Texas Youth Commission has available through their facilities," the court concluded that it would be in the "best interests of [K.T.] and of society that disposition be commitment to the Texas Youth Commission." The court also made the findings required by section 54.04(i)—it is in K.T.'s "best interest to be placed outside [his] home; and reasonable efforts were made to prevent or eliminate the need for [K.T.'s] removal from the home and to make it possible for [K.T.] to return to [his] home; and [K.T.], in [his] home, cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation." The rationale for the trial judge's decision is not contained in the court's written order but in her dialogue with K.T. at the disposition hearing:

K.T.: Do I—Do I really have to be sent to the Texas Youth Commission? Be-

cause I don't—I don't really have no problem with this. Weed, that's not really an addictive drug. You know, I don't have no problems with leaving it alone. I don't really have no weed or drug problem. I just do it just—just on occasion—just—it's not really like a problem.

They've got—You know, they've got drug counseling that I have attended on probation before. I could attend them classes. I know—I know going to the Texas Youth Commission, that's not going—that's not going to make it any better. They've got the same classes there.

I started getting my GED at Technology Academy. I was supposed to start the day after I had—they took me into the County. I was supposed to start on a Monday, but they took me in on a Sunday. So I didn't get to start that yet.

I was on a holiday so I wasn't going to be able to go and I have court today, and that's why I haven't really started going to—attending the school yet.

Court: Yes, sir, I understand. And that was my concern, also. But I'm more concerned to see that your participation, whatever it be, whether it's been actual possession of marijuana or it's being associated with other individuals that possess marijuana or cocaine stops.

K.T.: Yes, ma'am.

Court: And your mom has made a fantastic effort in straightening her life out. And she is to be commended for doing that. But at the same time, that doesn't help you.

And my concern is we need to help you to see that you don't actually do what she has in the past. I don't want you going to adult jail. I want you to live a responsible life. And in order to do that, you're going to have to have an education.

K.T.: Yes, ma'am.

Court: You've had the choices since last year, 2000, to be able to enroll in school. And I understand what your mom is saying about the problems that she's had in getting you enrolled in school. They are always there when you've been placed on probation before.

But you've not been in school at all to do that. She could even have you studying at home, being home-schooled, to see that you have the equivalent of a GED. And that's not occurred either.

There are lots of varieties of things out there that could have been accomplished. You cannot go anywhere in this life without an education and that's first and foremost.

And then my concern is the individuals that you're associating with. I know you love your brother. And I know you love your other brothers and sisters. Your twin brother, I'm talking about, and your other brothers and sisters.

But there are some other individuals that are not in your family that you're associating with that have drug backgrounds or drug histories of some sort. I'm not going to go into the details. I don't know any of the details of that. But those are bad choices.

What I want to see happening is not only do you get an education, but you also learn how to make right choices. Because if we start going through life making wrong choices, at your age, they just continue and they get worse and worse and worse. And so that's why.

And because of that reason and that reason only am I sending you to TYC is to see that those choices—or that you're given the choices and shown how to make those choices because you haven't seen how to make those choices in the past.

And I want you to see how to make those in the future, so you won't be back in here and down at the criminal justice center in the future when you've completed your TYC. Do you understand why I'm doing that?

K.T.: Yes, ma'am.

Court: It's not because of any criminal offense that's so heinous that you need to be there, but it's the place that we find that's going to be the best one.

K.T.: Yes, ma'am. But at the time I stayed with my grandmother in the west side where all my friends are at. And, now, I live with my mother, I can stay away from there because I go over to my—

Court: That's okay. Go ahead and finish.

K.T.: I go over to my grandmother's house every—every day. And if you could just give me some kind of program where I don't—I could just be at—stay at home because I don't need to associate with them. I go to my grandmother's house. That's where I'm at over there. If I stay with my mother, she don't stay around there.

Court: I understand that, sir. But, obviously, it could have been done in the past and it hasn't. And so we're going to do it for you now to see if we can't change the circumstances.

### SUFFICIENCY OF THE EVIDENCE

K.T. first complains that the evidence is legally and factually insufficient to support the juvenile court's finding that he was in possession of a controlled substance. We disagree.

### *Scope and Standards of Review*

 Findings in a bench trial "are entitled to the same weight as the verdict of a jury" and are reviewed under the same standards. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986). Accordingly, to decide whether the juvenile court's finding is supported by legally sufficient evidence, we consider all the evidence in its most favorable light to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *e.g., In re J.M.B.*, 990 S.W.2d 294, 297 (Tex.App.-San Antonio 1998, pet. denied). To decide whether the juvenile court's finding is supported by factually sufficient evidence, we again consider all the evidence, but we will set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *e.g., In re R.P.*, 37 S.W.3d 76, 78 (Tex.App.-San Antonio 2000, no pet.).

### *Discussion*

 K.T. engaged in delinquent conduct if he "knowingly or intentionally" possessed "a usable quantity of marijuana." Tex. Health & Safety Code Ann. § 481.121(a)(b)(1) (Vernon Supp.2002); Tex. Family Code Ann. § 51.03(a)(1) (Vernon 2002). A person possesses a controlled substance if he: (1) exercises care, control, and management of the substance; and (2) knows that the substance is contraband. *Puente v. State*, 888 S.W.2d 521, 526 (Tex.App.-San Antonio 1994, no pet.) (citing *Cude v. State*, 716 S.W.2d 46 (Tex. Crim.App.1986)). However, a person's

possession of the contraband need not be exclusive; it is sufficient if the evidence establishes the accused and another jointly possessed the contraband. *Martin v. State,* 753 S.W.2d 384, 386 (Tex.Crim.App. 1988). To show joint possession, "the evidence must affirmatively link the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband as well as control over it." *Id.* The affirmative links can be established by additional facts and circumstances indicating the accused's knowledge of and control over the contraband. *Pollan v. State,* 612 S.W.2d 594, 596 (Tex. Crim.App. [Panel Op.] 1981). Thus, joint possession over a controlled substance in a vehicle may be established if the controlled substance is in open or plain view, there is a noticeable odor in the car, and the substance is conveniently accessible to the driver. *See Duff v. State,* 546 S.W.2d 283, 287–88 (Tex.Crim.App.1977); *Heltcel v. State,* 583 S.W.2d 791, 792 (Tex.Crim.App. [Panel Op.] 1979). The trier of fact must resolve any conflicts in the evidence, determine the weight to be given any particular piece of evidence, and evaluate the credibility of the witnesses. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

Here, the arresting officer noticed a very strong odor of marijuana emanating from the vehicle; and Duncan admitted the car "probably could have" smelled of marijuana. Duncan also testified that, immediately before they were pulled over, the blunts and cigars were in a center cupholder in K.T.'s clear view; indeed, one of the blunts was found in a cup in very close proximity to where K.T. was seated as the driver or in the driver's seat itself. We hold this evidence, when viewed in the light most favorable to the juvenile court's finding, is sufficient for a rational trier of fact to have found that K.T. exercised care,

control, and management over the marijuana and knew that the substance was contraband. This finding is not so against the great weight of the evidence as to be manifestly unjust.

### COMMITMENT TO TYC

K.T. next complains that the trial court abused its discretion in committing him to the Texas Youth Commission until his twenty-first birthday or until TYC orders his release. More specifically, K.T. argues the trial court erred "by using his referral history to justify the [c]ourt's decision to send him to the Texas Youth Commission"; the record contains little evidentiary support for the trial court's finding that K.T. "in [his] home, cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation"; and the court's statement that "[i]t's not because of any criminal offense that's so heinous that you need to be there, but it's the place that we find that's going to be the best one" establishes that the court did not believe the possession charge justified commitment to TYC.

### *Which Standard of Review?*

■ As set forth above, Texas' Juvenile Justice Code vests the trial court with discretion to commit a juvenile to the Texas Youth Commission for a misdemeanor offense under certain circumstances. *See* TEX. FAM.CODE ANN. § 54.04(d)(2)(Vernon 2002). However, neither the Juvenile Justice Code nor the Texas Rules of Appellate Procedure sets forth the standard of review to be employed in reviewing commitment orders. This and other courts of appeals have held that, although review of a juvenile disposition order is conducted under an abuse of discretion standard, the trial court's findings of fact are reviewed for legal and factual sufficiency of the evi-

dence. *See, e.g., In re of K.R.*, 82 S.W.3d 660, 661 (Tex.App.-San Antonio 2002, no pet.); *In re J.S.*, 993 S.W.2d 370, 372 (Tex.App.-San Antonio 1999, no pet.); *In re A.S.*, 954 S.W.2d 855, 861 (Tex.App.-El Paso 1997, no pet.). In our view, the application of legal and factual sufficiency standards of review in this context is inappropriate.

When an issue involving both questions of law and questions of fact may be decided by either the court or the jury, legal and factual sufficiency review of the fact findings, by whomever made, is appropriate. For instance, if a trial court makes an award of attorney's fees under the Declaratory Judgment Act, it resolves both questions of fact (whether the fees sought are reasonable and necessary), as well as questions of law (whether an award of fees is equitable and just); and, while the trial court's award is subject to an abuse of discretion standard, its resolution of the fact questions is subject to sufficiency review. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). "This multi-faceted review involving both evidentiary and discretionary matters is required by the language of the Act," *id.*, but it also promotes consistency since the factual determinations are reviewed under the same standards, regardless of whether they are made by the court or by the jury. But if an issue involving both questions of fact and law is entrusted by statute to the trial court's discretion, Texas courts generally employ the abuse of discretion standard without regard to the standards for evidentiary review. *See Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ) (citing cases).

In keeping with this general principle, in *R.J.H.*, the supreme court held the abuse of discretion standard applies when reviewing the voluntariness of a juvenile's confession—another mixed question of law and fact. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex.2002). In so doing, the court reasoned that, in the absence of a rule, statute, or court decision, "an abuse-of-discretion standard ... seems ... to make the most sense and is most consistent with appellate procedure in civil cases generally." *Id.* Thus, the court "deferr[ed] to the trial court's findings of historical fact but determine[d] de novo whether those facts show that a juvenile's statements were made voluntarily for purposes of constitutional due process." *Id.* at 6–7.

By employing an abuse of discretion standard divorced from the standards for evidentiary review, we simultaneously serve two equally important objectives. First, because we do not conduct factual sufficiency review, we afford significantly more deference to the trial court's factual determinations. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002) ("The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision."). This is appropriate, as a general rule, because of the trial judge's superior ability to judge witnesses' credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). But it is even more appropriate when the decision being reviewed emanates from a specialized court. *See In re T.K.E.*, 5 S.W.3d at 786 (Rickhoff, J., concurring) (noting that in the specialized juvenile courts, the "trial judges develop a great deal of perceptive power not revealed in the record"). It is also particularly appropriate when it is helpful for the trial judge to "view[ ] the facts of a particular case in light of the distinctive features and events of the community." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

The second advantage of the abuse of discretion standard is that it permits the appellate court to review questions of law de novo, which "tends to unify precedent" since "legal rules ... acquire content only through application" and which enables "appellate courts ... to maintain control of and to clarify, the legal principles." *Ornelas*, 517 U.S. at 697, 116 S.Ct. 1657. Both of these advantages weigh heavily in favor of employing the abuse of discretion standard in the context of a trial court's order committing a juvenile to TYC under section 54.04(d)(2). By employing this standard, we simultaneously afford the greatest measure of deference available to the trial court's factual determinations, while enabling the appellate courts to develop the legal principles involved and encourage their consistent application to similar facts.

The concurring justices contend the abuse of discretion standard should not be employed because in this context unlike the suppression context involved in *R.J.H.*, "the trial court is not applying a set legal standard to the facts." While we recognize that Texas' Juvenile Justice Code, unlike its counterpart in other some other states,[2] does not itself contain such a standard, denominated as such, this omission does not mean the Code does not contain a standard. In similar circumstances, the courts in other jurisdictions have derived the standard from the legislatively-expressed purposes of the state's juvenile system and held the ultimate legal question in reviewing a disposition order is whether, under an abuse of discretion standard, the trial court's disposition conforms to "the purposes of the Juvenile Court Law." *In re Michael R.*, 73 Cal. App.3d 327, 140 Cal.Rptr. 716, 720 (1977). We believe that, when an appropriate case is presented, a similar approach will yield the standard for reviewing disposition orders in Texas. *See* TEX. FAM.CODE ANN. § 51.01 (Vernon 2002). But to adopt the concurring justices' view that there is no set legal standard prevents the applicable legal rules from acquiring content through application and ensures that the appellate courts will neither maintain control of nor clarify the legal principles involved. *See Ornelas*, 517 U.S. at 697, 116 S.Ct. 1657. Even more importantly, to say there is no legal standard would effectively insulate these orders from meaningful appellate review. This result would seem to us to be fundamentally inconsistent with the legislatively-mandated right to appeal a juvenile disposition order. *See* TEX. FAM.CODE ANN. § 56.01(c)(1)(B) (Vernon 2002).

In light of *R.J.H.* and fundamental precepts of appellate review, we hold that the criminal abuse of discretion standard—divorced from evidentiary standards of legal and factual sufficiency—applies to a trial

---

**2.** For instance, the juvenile code in North Carolina expressly provides:

> The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction, including the protection of the public. The court should develop a disposition in each case that:
> (1) Promotes public safety;
> (2) Emphasizes accountability and responsibility of both the parent, guardian, or custodian and the juvenile for the juvenile's conduct; and

> (3) Provides the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of the community.

*State v. Tucker*, 573 S.E.2d 197, 201 (N.C.Ct. App.2002) (quoting N.C. Gen.Stat. § 7B–2500 (2001)). *See also K.A. v. State*, 775 N.E.2d 382, 386 (Ct.App.Ind.2002) (quoting Indiana Code section 31–37–18–6, which sets forth factors the juvenile court must consider when entering a dispositional decree).

court's juvenile disposition order under section 54.04(d)(2).

### Standard of Review

In the criminal context, the abuse of discretion standard requires that we "view the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical fact that are supported by the record. *Guzman*, 955 S.W.2d at 89. However, when the resolution of the factual issue does not turn upon an evaluation of credibility or demeanor, we review the trial court's determination of the applicable law, as well as its application of the appropriate law to the facts it has found, de novo. *Id.*

### Referral History

■■■ K.T. contends the trial court erred in "using his referral history to justify the [c]ourt's decision to send him to the Texas Youth Commission." We disagree. K.T. has not cited, and we have not found, any statutory or case law authority prohibiting the juvenile court from considering a juvenile's referral history when deciding whether to commit him to TYC under section 54.04(d)(2). Indeed, consideration of the juvenile's referral history is mandated if the court is considering commitment to TYC without a determinate sentence and the juvenile's previous adjudications were for misdemeanor offenses. *See* TEX. FAM. CODE ANN. §§ 54.04(d)(2), 54.04(s).

### Probation in Home Setting

■■■ K.T. also contends the record contains little evidentiary support for the trial court's finding that K.T. "in [his] home, cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation." We again disagree.

According to K.T.'s probation officer, Alberta Ortiz, K.T. was seventeen years old at the time of the disposition hearing and had a history dating back over two years of adjudicated and unadjudicated referrals for possession of a controlled substance, truancy, and criminal trespass; he had twice been placed on probation for possession of marijuana; and, although his probation expired and he had completed Project Spotlight, he did not complete the second drug abuse program to which he was referred. Ortiz also testified that the last documented grade K.T. completed in school was the ninth grade; he had not attended school for the past year; and he had not enrolled in the YO general equivalency program to which Ortiz had referred him. Finally, Ortiz testified that K.T.'s home and social life were not conducive to rehabilitation; family members and friends had been convicted or adjudicated of drug charges; and K.T., who was unemployed, had associated with a gang. According to Ortiz, these factors led the probation department to recommend that K.T. be committed to TYC. If K.T. were not committed to TYC, when he turned eighteen, any non-TYC disposition—including referral to residential treatment programs—would automatically terminate. But if he were committed to TYC, he would have the opportunity to obtain an education and substance abuse counseling beyond the ten months remaining until his eighteenth birthday.

Given this evidence, we hold the trial court was authorized to find that K.T. "in [his] home, cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation."

### Criminal Offense

Finally, K.T. contends that the court's statement that "[i]t's not because of any criminal offense that's so heinous that you need to be there, but it's the place that we

find that's going to be the best one" establishes that the court did not believe the current misdemeanor possession charge justified commitment to TYC. We agree. But a juvenile court's order committing a juvenile to TYC without a determinate sentence for a misdemeanor offense need not—indeed, cannot—rest solely on the current offense. *See* TEX. FAM.CODE ANN. §§ 54.04(d)(2), 54.04(s). As noted above, the court must consider previous adjudications. *See id.* The court must also consider the juvenile's best interests, previous rehabilitative efforts, the juvenile's home environment, *see id.* § 54.04.(i), and the myriad of factors dictated by the purposes of the Juvenile Justice Code. *See id.* § 54.01.

### CONCLUSION

K.T. has not demonstrated that the juvenile court abused its discretion in committing him to TYC without a determinate sentence. Nor has he shown that the evidence is insufficient to support the court's adjudication order. We therefore affirm the judgment.

Concurring opinion by CATHERINE STONE, Justice, joined by ALMA L. LÓPEZ, Chief Justice.

CATHERINE STONE, Justice concurring, joined by ALMA L. LÓPEZ, Chief Justice.

I concur with the judgment of the court; I write separately, however, because I believe the majority needlessly overrules prior decisions of this court and alters the standard of review.

In justifying its alteration of the standard of review, the majority relies on the supreme court's recent decision in of *In re R.J.H.,* 79 S.W.3d 1 (Tex.2002). In that case, the supreme court noted that "no rule, statute, or court decision" prescribed a standard for appellate review of a ruling

on a motion to suppress in juvenile cases. For this reason, the Texas Supreme Court adopted the abuse of discretion standard applicable in reviewing a trial court's ruling on a motion to suppress in criminal cases. The court announced that it would "defer to the trial court's findings of historical fact but determine de novo whether those facts show that a juvenile's statements were made voluntarily for purposes of constitutional due process." This standard was adopted by the Texas Court of Criminal Appeals in *Guzman* for issues involving mixed questions of law and fact. In ruling on a motion to suppress, a trial court is required to apply an established legal standard to the facts presented.

There are numerous reasons an abuse of discretion standard should not apply in this context. First, in determining an appropriate disposition in a juvenile case, the trial court is not applying a set legal standard to the facts. Although the trial court is guided by the requirements contained in section 54.04(i) of the Family Code, the ultimate decision of whether disposition should include placement outside the child's home or commitment to TYC is within the trial court's discretion. On review, "[t]he question is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles." *In re L.R.,* 67 S.W.3d 332, 338–39 (Tex.App.-El Paso 2001, no pet.). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.* Although a reviewing court may consider the sufficiency of the evidence to support the required findings under section 54.04 as a factor in considering whether the trial

court abused its discretion, we are not permitted to determine *de novo* whether those facts supported the disposition ruling because we may not substitute our opinion for that of the trial court. A trial court that routinely handles juvenile dispositions is in an appreciably better position than an appellate court to decide an appropriate disposition in a given case; therefore, an appellate court should not independently determine whether the disposition was appropriate. Finally, unlike the situation in *In re R.J.H.*, there are numerous court decisions prescribing a standard for appellate review of a disposition ruling.

The findings required by section 54.04(i) do not remove the trial court's discretion in ordering a particular disposition in any given case. A trial court may determine that each of the requirements set forth in section 54.04(i) are present and for some reason still exercise its discretion not to order placement outside the home. The trial court cannot, however, order placement outside the home without the required findings. A trial court acts without reference to guiding rules and principles if the trial court orders placement outside the home in the absence of evidence to support the findings required by section 54.04(i). For this reason, a sufficiency review is the appropriate standard.

In *In re J.S.*, J.S. challenged the sufficiency of the evidence to support the trial court's finding that he could not be provided the quality of care and level of support and supervision within his home. 993 S.W.2d 370, 374 (Tex.App.-San Antonio 1999, no pet.). After reviewing the evidence, we determined that the only evidence supporting a finding that J.S. was not being provided adequate support in his home "stemmed from a time period in which [J.S.] was living with his mother, the same time at which the offense occurred." *Id.* at 374. We then noted that J.S. had

been living with his father for over a year after the offense occurred and prior to the hearings on adjudication and disposition. *Id.* During that time, J.S. had attended individual, group and family counseling, his father actively participated in counseling, the counselors noted J.S.'s progress in acknowledging and accepting what he had done wrong and expressing remorse for his actions. *Id.* Accordingly, we held that there was no evidence that J.S.'s father could not provide the quality of care and level of support and supervision J.S. needed. *Id.* In the absence of evidence to support this finding, the trial court did not have the discretion to order placement outside the home.

In my view, although the majority advocates an abuse of discretion standard, the majority applies a sufficiency analysis in considering whether the evidence in this case is sufficient to support the trial court's finding that K.T. cannot be provided the quality of care and level of support and supervision in his home. After reviewing the evidence relevant to the trial court's finding, the majority concludes, "Given this evidence, we hold the trial court was authorized to find that K.T. 'in [his] home, cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation.'" In holding that the trial court was authorized to make the finding because evidence supported that finding, the majority necessarily reviewed the sufficiency of the evidence to support the finding, thereby using the same standard of review and applying the same analysis used in *J.S.* and our prior decisions.

For these reasons, I would continue to follow this court's prior rulings in *In re K.R.* and *In re S.J.*