*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## MEMORANDUM OPINION

No. 04-08-00173-CV

**IN THE MATTER OF J.A.S.**, a Juvenile

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-JUV-02658
Honorable Laura Parker, Judge Presiding

Opinion by:      Alma L. López, Chief Justice

Sitting:           Alma L. López, Chief Justice
                    Catherine Stone, Justice
                    Sandee Bryan Marion, Justice

Delivered and Filed:    September 10, 2008

AFFIRMED

J.A.S., a seventeen year-old juvenile, contends the trial court abused its discretion by committing J.A.S. to the Texas Youth Commission in modification of J.A.S.'s disposition of probation. J.A.S. argues a continuation of probation under her father's supervision would have been a more appropriate disposition. We affirm the trial court's order of disposition.

### BACKGROUND

When J.A.S. was twelve years-old, her behavioral problems began when she was arrested for Assault Bodily Injury. Although that charge was ultimately dismissed, J.A.S. was again arrested for Theft $50-$500 in February of 2006 and successfully completed six months deferred prosecution.

According to J.A.S.'s case history, J.A.S. has had numerous behavioral problems including truancy, violating curfew, and running away from home.

In August of 2007, J.A.S. was arrested for stealing a U-Haul truck and evading arrest. J.A.S. pled true to the felony offense of Unauthorized Use of a Vehicle. The charge of Evading Arrest was rejected, and the State abandoned its allegation of Theft $1,500-$20,000. J.A.S. was placed on twelve months probation in the custody of her mother in Medina County commencing on October 3, 2007.

On November 1, 2007, J.A.S. submitted to a random drug test resulting in a positive indication of marijuana. J.A.S. was then placed on maximum supervision reporting weekly. On November 6, 2007, J.A.S.'s mother reported J.A.S. had run away and was last seen with her boyfriend, whom she had been previously ordered not to contact. It was believed that J.A.S. was living with her father in San Antonio; therefore, the Medina County probation office transferred her supervision to Bexar County on November 13, 2007. On November 26, 2007, Bexar County Probation Officer Patty Gonzales contacted both parents who reported they had not seen J.A.S. in several weeks and her whereabouts were unknown. A warrant for J.A.S.'s arrest was issued.

On December 6, 2007, J.A.S. was arrested for Failure to Identify to a Police Officer – False Information. J.A.S. received deferred adjudication for that offense. J.A.S. was then arrested on the active warrant on January 24, 2008. At the time of her arrest, she was residing with her boyfriend. The State filed a motion to modify J.A.S's probation disposition based on her violation of the following three conditions of her probation: (1) failure to avoid use of illegal drugs, drug paraphernalia, or alcoholic beverages; (2) leaving home without permission; and (3) violating curfew.

At a hearing on the motion to modify disposition held February 5, 2008, J.A.S. was adjudicated to have violated all three conditions of her probation. The trial judge then accepted testimony regarding J.A.S.'s disposition from J.A.S., her probation officers, her father, and her mother. The trial judge found that reasonable efforts had been made to prevent J.A.S.'s removal from her home and to return J.A.S. to her parents. The court found J.A.S. was unable to receive adequate care and supervision at home, and J.A.S. was unable and unwilling to comply with her probation and had become a danger to herself. Accordingly, the trial court committed J.A.S. to the Texas Youth Commission. J.A.S. appeals.

### STANDARD OF REVIEW

Trial courts have broad discretion in determining a suitable disposition for juveniles adjudicated to have engaged in delinquent conduct. *In re K.J.N.*, 103 S.W.3d 465, 465 (Tex. App.—San Antonio 2003, no pet.). We review a trial court's disposition for an abuse of discretion, i.e. the trial court acted arbitrarily, without reference to guiding rules or principles. *Id.* at 466. When determining if a juvenile should be committed to the Texas Youth Commission, the trial court must find by a preponderance of the evidence that the juvenile violated a court order and apply the guiding principles found in section 54.05 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.05(f) (Vernon Supp. 2007); *In re T.W.K.*, 4 S.W.3d 790, 791 (Tex. App.—San Antonio 1999, no pet.). We consider the legal and factual sufficiency of the evidence in analyzing whether the trial court abused its discretion. *In re K.J.N.*, 103 S.W.3d at 466. We view the evidence in the light most favorable to the trial court's ruling, giving great deference to findings of historical fact that are supported by the record. *In re K.T.*, 107 S.W.3d 65, 75 (Tex. App.—San Antonio 2003, no pet.). "However, when the resolution of the factual issue does not turn upon an evaluation of credibility

or demeanor, we review the trial court's determination of the applicable law, as well as its application of the appropriate law to the facts it has found, de novo." *Id.* Absent an abuse of discretion by the trial court, we will not disturb the trial court's disposition. *In re K.J.N.*, 103 S.W.3d at 466.

## ANALYSIS

In her sole issue, J.A.S. contends the trial court abused its discretion by placing J.A.S. on probation outside of her home and committing J.A.S. to the Texas Youth Commission because placing her on probation in her father's care would have been a more appropriate disposition. If a trial court places a juvenile on probation outside the juvenile's home, the trial court's order must include its determination of the following:

> (A) it is in the child's best interests to be placed outside the child's home;
> (B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and
> (C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM. CODE ANN. § 54.04(i)(1) (Vernon Supp. 2007).

According to the record, J.A.S. pled true to violating a condition of her probation requiring her to avoid the use of illegal drugs, drug paraphernalia, or alcoholic beverages. The trial judge adjudicated J.A.S. to have also violated two other probation conditions: leaving home without permission and violating curfew. The trial judge proceeded to determine J.A.S.'s disposition and considered testimony from her probation officers, her father, her mother, and J.A.S.

Patty Gonzales, J.A.S.'s probation officer, testified that, after being placed on probation in her mother's care for Unauthorized Use of a Vehicle, J.A.S. "again violated probation conditions by

leaving home without permission, not following her curfew," and not attending her GED classes. Gonzales reported that J.A.S. had tested positive for marijuana. Gonzales also stated that J.A.S. left home and was living with her 21-year old boyfriend. Gonzales testified that neither parent knew J.A.S.'s whereabouts during the time she was living with her boyfriend. Gonzales stated that J.A.S's mother did not want to take J.A.S. back into her home because J.A.S. would not comply with the conditions of probation or her mother's rules. Gonzales stated that J.A.S.'s father initially did not want to take J.A.S. into his home because of problems between his wife and J.A.S.; however, during the pendency of the hearing setting, J.A.S.'s father had spoken to his wife and decided he was willing to take J.A.S. back into this home. Gonzales added J.A.S.'s mother disagreed with J.A.S. moving in with her father because she believes J.A.S. will not comply with the conditions of probation. The Bexar County probation department recommended J.A.S.'s commitment to the Texas Youth Commission.

J.A.S.'s father stated he wanted J.A.S. to complete her GED and get a job, but due to J.A.S.'s failure to comply in the past he "ha[d] no historic record that she would be successful. It would be [in] the discretion of the court." J.A.S.'s father testified that there had been two other times when judges had released J.A.S. to him, but that was because there was an issue between J.A.S. and her mother. J.A.S.'s father stated:

> I work full-time. It would be—I would not be able to monitor all the time. My—she would have to—of course abide by her education process and stay busier with full-time employment. But I am willing to take that—give her a chance on doing that and an opportunity to be productive in the community.

Upon examination by the trial court, however, J.A.S.'s father testified that he had a suspicion that J.A.S. was living with her boyfriend after J.A.S. left her mother's house but did not inform the probation officer.

J.A.S.'s mother stated that she wanted J.A.S. "to get an education" and "have a successful future." J.A.S.'s mother added that:

> I feel if she isn't sent to TYC she will end up in prison and even worse.
>
> I want to try to help her get the help that she needs. And I feel the only way is through a higher system, a higher institution, that can do that, I believe.
>
> Me and the father have [shown] no ability to control her. So she needs to go. And I just want to leave it up to you and to professionals here that know what can help this child reach her full potential. She is very intelligent, very smart, and has a lot to offer. I feel she's wasting every bit of it. And if she continues this path, it's going to end up worse.

Kathy Collins, J.A.S.'s Medina County probation officer, stated that:

> [B]ased on my experience with her father and her mother, neither one of them—[J.A.S.] will not accept either one of their supervision. I know his wife—[J.A.S's father's] wife has been afraid for her life or afraid of [J.A.S.] assaulting her.
>
> Once I found a knife on her myself searching her . . . .
>
> [B]ased on my experience with her, she will not accept the supervision of either one of these parents.
>
> There's a lot of conflict between them, too, . . . there's a lot of, I think, fear with [J.A.S.] as well, so getting away from them [and] being in some sort of therapeutic setting to where she can get her GED.

Collins agreed with the Bexar County probation department's recommendation that J.A.S. be committed to the Texas Youth Commission.

The trial judge also considered the pre-disposition report and staffing sheets as permitted by section 54.05(e) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.05(e) (Vernon Supp. 2007). The reports recounted J.A.S.'s offenses and behavioral problems. The pre-disposition report included a family history which indicated J.A.S. had a contentious home life. Based on J.A.S.'s

recidivism and her parents' inability to control her, the State recommended commitment to the Texas Youth Commission.

Under the facts of this case, we conclude that reasonable efforts were made to prevent J.A.S.'s removal from her home and to return J.A.S. to a parent. J.A.S. had previously exhibited delinquent behavior. Subsequently, J.A.S. pled true to the offense of Unauthorized Use of a Vehicle and was placed on probation under the care of her mother. Less than one month later, she tested positive for marijuana and pled true to failure to avoid drugs. Five days later, J.A.S. left home to live with her boyfriend, whom she was ordered not to contact. Every person who testified during the disposition hearing recommended J.A.S. be committed to the Texas Youth Commission except J.A.S.'s father. J.A.S.'s father admitted, however, that he had no evidence to indicate J.A.S. could successfully live with him and comply with the conditions of probation, and that J.A.S.'s disposition would be in the trial court's discretion.

There is ample evidence to support the trial court's finding that J.A.S. was unable to receive adequate care and supervision at home. J.A.S.'s mother stated she could not control her daughter, and J.A.S's father admitted he had been unsuccessful in controlling J.A.S. in the past. J.A.S.'s probation officers confirmed that neither parent could control J.A.S. and that her parents had been unaware of her whereabouts for several days during November and December of 2007. There is sufficient evidence to support the trial court's findings that J.A.S. was unable and unwilling to comply with her probation and had become a danger to herself. J.A.S. was adjudicated to have violated three conditions of her probation, and J.A.S. pled true to using illegal drugs. J.A.S. ran away from home and ended up with a person she was ordered not to contact. We conclude the trial

court did not abuse its discretion in determining it was best for J.A.S. to be placed outside the home. J.A.S.'s sole issue is overruled.

Alma L. López, Chief Justice