



## MEMORANDUM OPINION

No. 04-11-00116-CV

**IN THE MATTER OF A.M.C**., A Juvenile

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-JUV-02592
Honorable Carmen Kelsey, Judge Presiding

Opinion by:   Phylis J. Speedlin, Justice

Sitting:   Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:   December 7, 2011

AFFIRMED

A.M.C., a juvenile, appeals a disposition order committing him to the Texas Youth Commission (TYC) for an indeterminate period.  In a single issue, A.M.C. contends the juvenile court abused its discretion in committing him to TYC because the evidence does not support a finding that reasonable efforts were made to prevent or eliminate the need for his removal from the home.  We affirm the court's order of disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

Sixteen-year-old A.M.C. was detained and charged with deadly conduct stemming from an October 3, 2010 incident in which A.M.C., a passenger in a vehicle, fired a gunshot at another vehicle when leaving a party.  The State filed a petition alleging A.M.C. engaged in delinquent

conduct by knowingly discharging a deadly weapon, namely a firearm, at and in the direction of a vehicle and was reckless as to whether the vehicle was occupied. *See* TEX. PENAL CODE ANN. § 22.05(b)(2), (e) (West 2011) (third degree felony). At the adjudication hearing on January 3, 2011, A.M.C. pled true to the felony offense of engaging in deadly conduct in an open plea, with disposition to be determined. A.M.C. remained in continuous detention at the Bexar County Juvenile Detention Center from his initial detention on October 20, 2010 through his disposition hearing on January 10, 2011.

At the disposition hearing, the court heard testimony regarding A.M.C.'s conduct and behavior from several witnesses, including family and friends as well as A.M.C's mother and A.M.C. himself. Several witnesses testified that A.M.C.'s behavior changed after his father unexpectedly died in April 2009; A.M.C. testified his father was his best friend, he felt lost, angry and depressed after his father passed away, and he began using marihuana, skipping school and associating with older peers who had a negative influence on him. A.M.C.'s mother testified she was not aware of his substance abuse, but that he was sometimes defiant and disrespectful, refusing to follow her rules, sneaking out of the house, and driving her car without a license or her permission. A.M.C.'s girlfriend at the time testified about an incident in which A.M.C. threatened her with an antique sword at his house when he became angry and his mother was not at home. On the morning of A.M.C.'s arrest on the deadly conduct charge, his mother thought he was at home, and only discovered that he had taken her car, without her permission or a driver's license, when the police arrived looking for him. The police found a stolen gun under A.M.C.'s mattress, and found drug paraphernalia inside his mother's car when it was located at A.M.C.'s school. A.M.C.'s mother acknowledged A.M.C.'s need for discipline and his two prior referrals for a theft in 2007 and for graffiti in 2008; she requested that he be referred for

placement instead of being committed to TYC. All of the other witnesses, except the victim's mother, stated their recommendation that A.M.C. be put on probation or placement outside the home and expressed their belief that commitment to TYC was too harsh; the victim's mother requested that A.M.C. be committed to TYC. A.M.C. and his mother testified that he had never been put on probation in the custody of an adult and had never been put in any formal placement outside the home. A.M.C. testified he would comply with the conditions of probation or placement, and that TYC would be "too much."

A.M.C.'s pre-disposition report was also admitted into evidence. It showed A.M.C. had two prior referrals to the Bexar County Juvenile Probation Department: a Theft $50-$1500 in 2007 for which he was assessed, counseled and released; and Graffiti $500-$1500 in 2008 for which he received a deferred prosecution that he successfully completed. The report also reflected that A.M.C. had four pending charges in municipal court (two charges of Operating a Motor Vehicle without a Driver's License, an Improper Lane Change-Signal, and a Minor Failure to Attend School) and a pending non-arrest Possession of Marihuana charge, all of which arose during the same September-October 2010 time period as the Deadly Conduct-Firearm incident. In addition, at the time of the disposition hearing, A.M.C. also had a Contempt of Court referral from the Justice of the Peace Precinct #2 arising out of his failure to complete a deferred disposition on a Failure to Attend School charge. The pre-disposition report also documented A.M.C.'s alcohol and substance abuse, his association with drug-dealing and drug-using friends, and his behavioral problems while under his mother's care. The report concluded with a unanimous recommendation in favor of commitment to TYC "due to the very serious nature of the offense as well as the use of a weapon (firearm)," and as "the best resource available for [A.M.C.]'s rehabilitation and for the protection of the community."

At the conclusion of the disposition hearing, the juvenile court made the required statutory findings that the child was in need of rehabilitation and that protection of the child and the public required that disposition be made. The court also made the following section 54.04(i) findings: (1) that it was in A.M.C.'s best interest to be placed outside of his home and that reasonable efforts were made to prevent or eliminate the need for his removal from the home and to make it possible for his return; (2) that A.M.C., in his home, cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation; and (3) considering the adequate protection of the public and the available services of TYC, it is in the best interest of A.M.C. and of society that A.M.C. be committed to TYC. In support of its finding that commitment to TYC was the appropriate disposition, the juvenile court cited the following specific reasons:

> Serious nature of offense; respondent's current age;[1] frequent drug use; failure to attend school; failure to follow rules at home; disregard for the safety of others by firing a gun in a residential area; threatening witnesses in this case; following the recommendation of the district attorney's office, the probation officer and the staffing committee; lack of supervision at home; in possession of a stolen weapon; using other people's vehicles without permission; and found in possession of drugs in the detention center.

The court also stated it was taking into consideration the contempt of court charge from the Justice of the Peace court and A.M.C.'s failure to successfully complete his deferred prosecution in that case. Based on the above findings, the court committed A.M.C. to TYC for an indeterminate term. A.M.C. timely appealed.

## STANDARD OF REVIEW

A juvenile court has broad discretion to determine a suitable disposition for a juvenile adjudicated as having engaged in delinquent conduct. *In re K.J.N.*, 103 S.W.3d 465, 465–66

---

[1] The juvenile court stated on the record that because A.M.C. was about to turn 17, he was "too old for placement" because a proper placement requires a minimum commitment of 18 months.

(Tex. App.—San Antonio 2003, no pet.). A juvenile court abuses its discretion when it acts in an unreasonable or arbitrary manner, and without reference to any guiding rules or principles. *Id.* at 466. The guiding rules and principles governing the suitable disposition for a child who has been adjudicated delinquent are provided by the Juvenile Justice Code, which is located in the Texas Family Code. Section 54.04(i) authorizes the court to commit a juvenile to TYC upon three findings: (1) "it is in the child's best interests to be placed outside the child's home;" (2) "reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home;" and (3) "the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation." TEX. FAM. CODE ANN. § 54.04(i) (West Supp. 2011). We review the court's disposition order and findings under an abuse of discretion standard separate and apart from legal and factual sufficiency standards. *In re K.T.*, 107 S.W.3d 65, 74–75 (Tex. App.—San Antonio 2003, no pet.). We view the evidence in the light most favorable to the juvenile court's ruling, affording almost total deference to its findings of historical fact supported by the record, but review de novo the court's determination of the applicable law, its application of the law to the facts, and its resolution of any factual issues that do not involve credibility assessments. *Id.* at 75.

## DISCUSSION

In his sole point of error, A.M.C. contends the juvenile court abused its discretion by committing him to TYC because the evidence does not support the court's finding that reasonable efforts were made to prevent or eliminate the need for A.M.C.'s removal from his home and to make his return to the home possible. Specifically, A.M.C. asserts that the juvenile court made no alternative placement efforts before committing him to TYC, as shown by the fact

that he remained in continuous detention from the time of his initial detention until his disposition hearing.

When a juvenile is adjudicated delinquent for conduct that constitutes a felony, the juvenile court may, in its discretion, commit the juvenile to TYC without a determinate sentence. TEX. FAM. CODE ANN. § 54.04(d)(2) (West Supp. 2011). A primary concern of the Juvenile Justice Code is the safety of the public. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004) (TYC is a severe form of incarceration which is reserved only for serious juvenile offenders); TEX. FAM. CODE ANN. § 51.01 (West 2008) (stating the purposes of the Juvenile Justice Code). As noted, *supra*, Family Code section 54.04(i) requires a juvenile court that commits a juvenile to TYC to include three findings in its disposition order: (1) that placement outside the home is in the juvenile's best interests; (2) that reasonable efforts were made to prevent or eliminate the need for removal from the home and to make return possible; and (3) that in the home the juvenile cannot be provided the quality of care and level of support and supervision the juvenile needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i). Although these three findings are essential, even if evidence supporting these findings is "scant," other evidence may justify an order committing a juvenile to TYC. *In re K.T.*, 107 S.W.3d at 68–69; *In re T.K.E.*, 5 S.W.3d 782, 785–86 (Tex. App.—San Antonio 1999, no pet.) (considering where the juvenile, a repeat sexual offender, could receive the best possible treatment and concluding that place was TYC). Specifically, it is appropriate for the court to consider the juvenile's prior referral history when considering commitment to TYC without a determinate sentence. *In re K.T.*, 107 S.W.3d at 75. Finally, the juvenile court is not required to exhaust all possible alternatives before committing a juvenile to TYC. *In re T.R.*, No. 04-10-00384-CV, 2011 WL 721496, at *2 (Tex.

App.—San Antonio March 2, 2011, no pet.) (mem. op.); *In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.—Texarkana 2007, no pet.).

Here, we cannot say the juvenile court abused its discretion in committing A.M.C. to TYC based on the evidence in the record which supports the three findings required by section 54.04(i). There was substantial evidence from several witnesses as well as A.M.C. and his mother that shows he would not receive the level of supervision and support in the home that is needed to successfully comply with the conditions of probation—A.M.C. frequently ignored his mother's rules, leaving the house in violation of his curfew and taking his mother's car without her permission and driving it without a license. In fact, two of A.M.C.'s pending charges for driving without a license occurred after midnight in the early morning hours. In addition, his mother stated she was unaware of A.M.C.'s on-going substance abuse, which he admitted. Every witness agreed that, regardless of the disposition assessed, removal from his home was necessary for A.M.C.'s rehabilitation; his mother requested placement outside the home, but not in TYC.

Further, as to what disposition is in A.M.C.'s best interests, the court was entitled to consider A.M.C.'s pre-disposition report and the other evidence which showed a progression in the frequency and severity of his delinquent conduct. As noted, his juvenile record consisted of two prior referrals for theft in 2007 and graffiti in 2008, on which he successfully completed a deferred prosecution. In the year 2010, however, A.M.C. collected the four pending charges in municipal court, plus a separate truancy charge in justice court, a "non-arrest" possession of marihuana, and the felony charge of deadly conduct-firearm in this case. Most, if not all, of these charges were based on A.M.C.'s conduct during September and October 2010, culminating in his detention on October 20, 2010 in this case. In addition, the facts and circumstances

surrounding A.M.C.'s commission of the deadly conduct offense illustrate the increase in the severity of A.M.C.'s delinquent conduct—he fired a gun at a vehicle at a party in a residential neighborhood, the firearm he used was stolen and found hidden under his mattress at home, and drug paraphernalia was found in the car he drove to school. A.M.C. admitted his association with negative peers and his on-going use of marihuana; he stated that he had been drinking on the night he fired the gun. Finally, the predisposition report states A.M.C. was found in possession of three Xanax pills while in the juvenile detention center.

As to whether reasonable efforts were made to avoid removal of A.M.C. from the home, the juvenile court knew, based on the predisposition report and testimony, that A.M.C. had previously received and completed a deferred prosecution in 2008, but had failed to complete his most recent opportunity for a deferred disposition in 2010. The court stated it was taking into consideration in this case A.M.C.'s contempt of court charge arising out of his failure to complete a deferred disposition on the 2010 truancy charge in justice court. The court also heard testimony that A.M.C. had never been placed on probation in the home or received a placement outside the home. However, given the evidence showing a continuing and increasingly severe pattern of delinquent conduct by A.M.C. during 2010, the trial court had discretion to determine that TYC was the best place for A.M.C., and was not required to first exhaust the alternatives of probation and outside placement. *See In re T.R.*, 2011 WL 721496, at *2. Applying the appropriate standard of review, we conclude the court's three findings required under section 54.04(i) and its additional specific findings set forth in its disposition order are supported by the record.

Based on the escalation in the frequency and level of A.M.C.'s delinquent conduct during the latter half of 2010, his recent failure to comply with the conditions of his deferred disposition

on the truancy charge, resulting in a contempt of court charge, and his admitted on-going drug and alcohol use, truancy and negative peer associations, we hold the juvenile court did not abuse its discretion in determining that A.M.C. should be committed to TYC pursuant to Family Code section 54.04(d)(2). *See In re J.A.*, No. 04-09-00556-CV, 2010 WL 816198, at *2–3 (Tex. App.—San Antonio March 10, 2010, no pet.) (mem. op.) (affirming juvenile's commitment to TYC, even though juvenile had no prior adjudications, in light of court's finding that juvenile was expelled from alternative school after being given a chance to attend as a result of disciplinary problems, numerous referrals for gang activities and physical confrontations, and admitted on-going substance abuse).

Based on the foregoing reasons, we overrule A.M.C.'s sole issue on appeal and affirm the trial court's disposition order.

Phylis J. Speedlin, Justice