**In the Matter of P.E.C.**

No. 04–05–00859–CV.

Court of Appeals of Texas,
San Antonio.

July 19, 2006.

Gerald C. Moton, Law Office of Gerald C. Moton, San Antonio, for appellant.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Appellant P.E.C., a juvenile, appeals from a disposition order committing him to the Texas Youth Commission (TYC) for an indeterminate period. We affirm the trial court's judgment.

### BACKGROUND

On January 28, 2005, the State filed an original petition alleging that P.E.C., a 14 year old special education student, engaged in delinquent conduct by committing burglary of a habitation. An adjudication and disposition hearing was held February 17, 2005, at which P.E.C. pled true to two counts of burglary of a habitation pursuant to a plea bargain. P.E.C. was adjudicated as having engaged in delinquent conduct and was placed in the custody of his parent under the supervision of the Bexar County Juvenile Probation Department for 12 months. On May 12, 2005, the State filed a motion to modify his disposition alleging that P.E.C. had violated Condition No. 7 of his probation requiring him to adhere to a 7:00 p.m. curfew, Condition No. 16 requiring him to attend school every day and follow all school rules, and Condition No. 26 requiring him to pay restitution. At the June 2, 2005 hearing, P.E.C. pled true to the alleged violations of his probation pursuant to a plea bargain. The judge modified P.E.C.'s disposition by extending the term of his probation to 18 months from the date of the hearing, and requiring three months to be served under intensive supervision with electronic monitoring, along with other modified conditions.

In September 2005, the State filed another motion to modify P.E.C.'s disposition alleging that he had committed the following violations of his probation: (1) he failed to attend school and follow school rules on or about June 27 and 29, July 8, 12 and 13,

2005; (2) on or about July 14, 2005, he failed to participate in and cooperate fully with the 60–day electronic monitoring program; (3) on or about July 14, 2005, he failed to participate in and cooperate fully with his day treatment; and (4) on or about July 14, 2005, he failed to pay restitution in monthly payments as ordered. P.E.C. pled "not true" to each alleged violation and a contested modification hearing was held on September 22, 2005. At the conclusion of the hearing, the trial judge found that P.E.C. had committed each of the alleged violations of his probation. After a psychological evaluation was completed, a disposition hearing was held on October 20, 2005, at which the judge entered orders adjudicating P.E.C. delinquent and modifying his disposition to commit him to TYC for an indeterminate period. The court found that it was in P.E.C.'s best interest to be placed outside the home, that reasonable efforts were made to prevent the need for removal from the home, that in the home he could not be provided the quality of care and level of support and supervision needed to meet the conditions of probation, and that commitment to TYC was in his best interest. The court further found that the juvenile probation department had extended numerous programs to P.E.C., including day treatment, but that he had continued to violate the law. Finally, the court found that P.E.C.'s educational needs "are being met and will continue to be met" at the Texas Youth Commission. The written orders were signed on October 26, 2005. P.E.C. timely appealed.

## ANALYSIS

On appeal, P.E.C. asserts that (1) he retained rights under the Individuals with Disabilities Education Act ("IDEA")[1] even though he was subject to the jurisdiction of the juvenile court; (2) the juvenile court lacked authority to change his educational placement by committing him to TYC until his administrative remedies under the IDEA were exhausted; (3) the defense of "necessity" excused his failure to comply with the electronic monitoring condition of his probation; and (4) the court abused its discretion by committing him to TYC based on his failure to pay restitution.

### Standard of Review

A juvenile court possesses broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *In re K.J.N.*, 103 S.W.3d 465, 465–66 (Tex. App.-San Antonio 2003, no pet.). Absent a showing of abuse of discretion, we will not disturb the court's modification of a juvenile's disposition. *Id.* at 466; *see In re K.T.*, 107 S.W.3d 65, 73–74 (Tex.App.-San Antonio 2003, no pet.) (applying abuse of discretion standard "divorced from the standards for evidentiary review" in reviewing juvenile commitment order). A court abuses its discretion when it acts in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles. *In re K.J.N.*, 103 S.W.3d at 466. The Texas Family Code permits a trial judge to commit a child to TYC if: (1) it is in the child's best interest to be placed outside the home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home; and (3) while in the home, the child cannot receive the quality of care and level of support and supervision needed to meet the conditions of probation. Tex. Fam. Code Ann. § 54.05(m) (Vernon Supp.2005). When a juvenile has been adjudicated delinquent, the court may modify its disposition and commit the juvenile to TYC if, after a hearing, it finds by a preponder-

---

1. 20 U.S.C.A. § 1400 *et seq.* (West Supp. 2006).

ance of the evidence that the juvenile violated a reasonable and lawful condition of probation. TEX. FAM.CODE ANN. § 54.05(j) (Vernon Supp.2005); *In re H.G.*, 993 S.W.2d 211, 213 (Tex.App.-San Antonio 1999, no pet.).

### Individuals with Disabilities Education Act

■ In his first and second issues, P.E.C. asserts that he retained special educational rights under the IDEA while he was on juvenile probation, and therefore, the juvenile court lacked authority to modify his disposition and commit him to TYC before his administrative remedies under the IDEA were exhausted. We review questions of law *de novo* in the context of a juvenile commitment. *In re K.T.*, 107 S.W.3d at 74.

■ The IDEA is a federal act that seeks "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C.A. § 1400(d)(1)(A); *Schaffer v. Weast*, 546 U.S. 49, ——, 126 S.Ct. 528, 531, 163 L.Ed.2d 387 (U.S.2005). The IDEA gives the States the primary responsibility for developing and executing educational programs for disabled children, but "imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer*, 126 S.Ct. at 531. Under the IDEA, a state or local educational agency must create an "individualized education program" (IEP) for each disabled child. 20 U.S.C.A. § 1414(d). If parents believe their child's IEP is inappropriate, they may request an "impartial due process hearing." 20 U.S.C.A. § 1415(f). At an administrative hearing challenging an IEP, the parents

bear the burden of proving the IEP is inappropriate. *Schaffer*, 126 S.Ct. at 537. The IDEA authorizes any party aggrieved by the results of an administrative hearing to bring a civil action in a federal district court or state court of competent jurisdiction. 20 U.S.C.A. § 1415(i)(2)(A). The record shows that prior to being adjudicated delinquent, P.E.C. was receiving special education services in the Emotional Disturbance Program through the San Antonio Independent School District. After adjudication, as a condition of his juvenile probation, P.E.C. attended and received day treatment at the Por Vida Academy, a charter school that contracts with the Bexar County Juvenile Probation Department. P.E.C. has been diagnosed with emotional disturbance, attention deficit disorder, oppositional defiant disorder, dysthymic disorder, R/O mathematics and reading disorder, and cannabis abuse.

At the disposition hearing, P.E.C. objected that he could not be committed to TYC without first being afforded his administrative rights under the IDEA because TYC commitment would change his educational placement. He argued that his inappropriate behavior which formed the basis of the alleged probation violations was a "manifestation" of his disability, and that under the IDEA's "stay put" provision he could not be committed to TYC without first exhausting his rights under the IDEA. *See* 20 U.S.C.A. § 1415(j); *see Schaffer*, 126 S.Ct. at 536 (the IDEA's "stay-put" provision in § 1415(j) requires a child to remain in his "then-current educational placement" during the pendency of an IDEA hearing). However, P.E.C. presented no evidence that his conduct in violation of his probation was due to his disability. Instead, P.E.C. asserted that the State bore the burden of proving that his alleged probation violations were *not* caused by his dis-

ability before it could change his educational placement by committing him to TYC. The juvenile court rejected P.E.C.'s arguments under the IDEA as illogical and "mixing apples and oranges." On appeal, P.E.C. raises the same issue and argues there is "implied conflict preemption" between the state and federal law; however, he cites no authority for the proposition that the IDEA restricts a state juvenile court's authority to modify a juvenile's disposition.

■ We conclude that P.E.C.'s argument based on the IDEA is flawed. The authority of the juvenile court to modify P.E.C.'s disposition by removing him from probation and committing him to TYC is not limited by the IDEA. *Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (holding the "stay-put" provision "in no way purports to limit or pre-empt the authority conferred on courts" to exercise their equitable powers to enjoin a dangerous disabled child from attending school). In *Honig*, the Supreme Court noted that the legislative history of a predecessor statute to the IDEA makes clear that "one of the evils Congress sought to remedy was the unilateral exclusion of disabled children by *schools*, not courts, and one of the purposes of [the "stay-put" provision], therefore, was 'to prevent *school* officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.'" *Id.* (emphasis added) (quoting *Burlington School Committee v. Massachusetts Dept. of Education*, 471 U.S. 359, 373, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)). Indeed, by its own terms, the "stay-put" provision of IDEA applies only to state or local school authorities during the administrative proceedings contemplated by the statute; it has no application to state court proceedings involving a juvenile who has been adjudicated delinquent. *See* 20 U.S.C.A. § 1415(j); *Honig*, 484 U.S. at 327, 108 S.Ct. 592. The proper avenue through which to challenge P.E.C.'s educational placement is by invoking the administrative procedures set forth in the IDEA, and by instituting a civil action in federal district court once the administrative remedies have been exhausted. 20 U.S.C.A. § 1415(f),(i). Moreover, P.E.C. would bear the burden of proving that his educational placement, or IEP, is inappropriate in such a proceeding. *See Schaffer*, 126 S.Ct. at 536–37 (rejecting the argument that under the IDEA, every IEP is presumed invalid until the school district demonstrates that it is valid, but noting that some states have enacted laws placing the burden on the school district under some circumstances). Here, the State had the burden to prove by a preponderance of the evidence that P.E.C. violated a condition of his probation before he could be committed to TYC, but had no burden to disprove that P.E.C.'s violations were caused by his disability. We overrule P.E.C.'s first and second issues.

### Defense of Necessity

In his third issue, P.E.C. asserts the defense of necessity excused his failure to comply with the probation condition which required him to wear an electronic monitor for 60 days. The gist of his argument is that the State's failure to comply with the IDEA procedures before seeking to modify his disposition created "imminent harm," and that he was justified in avoiding such harm by removing his ankle monitor and leaving the school campus before he could be taken into custody.

■ Necessity is a statutory defense of justification used to excuse criminal conduct. *Darty v. State*, 994 S.W.2d 215, 218 (Tex.App.-San Antonio, 1999, pet. ref'd). The Texas Penal Code provides that crimi-

nal conduct is justified under the defense of necessity if: "(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighs, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear." TEX. PEN.CODE ANN. § 9.22 (Vernon 2003). In order to raise the defense of necessity as justification for his conduct,[2] P.E.C. was required to first admit that he committed the alleged probation violation, *i.e.*, that he failed to comply with the electronic monitoring program. *Young v. State*, 991 S.W.2d 835, 838 (Tex.Crim.App.1999); *McGarity v. State*, 5 S.W.3d 223, 227 (Tex.App.-San Antonio 1999, no pet.) (one cannot establish that act is justified without first admitting to commission of act). P.E.C. did not testify at the modification hearing, and never admitted committing the alleged violation. In his brief, he asserts that his failure to deny the probation violation is a sufficient "admission." The fact that an accused did not testify, and did not deny committing the alleged conduct, is not the equivalent of *admitting* the conduct. *See Auston v. State*, 892 S.W.2d 141, 145 (Tex. App.-Houston [14th Dist.] 1994, no pet.) (defendant's failure to testify, or offer any evidence as to his state of mind, prevented him from raising plea of justification based on necessity because he did not specifically admit committing the charged offense). Here, no evidence was presented to raise the defense of necessity. Moreover, the defense of necessity cannot be claimed as justification for unlawfully avoiding legitimate police detention. *See Maldonado v.*

*State*, 902 S.W.2d 708, 712 (Tex.App.-El Paso, 1995, no pet.). P.E.C. was not entitled to claim the defense of necessity to justify his failure to comply with the electronic monitoring condition of his probation.

■ In addition, we note that the electronic monitoring violation was only one of several probation violations that P.E.C. was found to have committed. The violation of one condition of probation is sufficient to support a trial court's order modifying a juvenile's disposition. *In re S.G.V.*, No. 04–05–00605–CV, 2006 WL 923576 at *3 (Tex.App.-San Antonio April 5, 2006, no pet. h.). P.E.C.'s third issue is overruled.

### Failure to Pay Restitution

Finally, in his fourth issue, P.E.C. argues that the trial court abused its discretion in committing him to TYC based on his failure to make any restitution payments because he was unable to pay. P.E.C. presented no evidence at the modification hearing that his family was unable to make the $90 monthly restitution payments; the only evidence pertaining to ability to pay was testimony that P.E.C. did not have a job. Further, failure to pay restitution was only one of several probation violations that the court found P.E.C. committed. As stated, *supra*, the court in its discretion may modify a juvenile's disposition based on a finding of one violation of probation. *In re S.G.V.*, 2006 WL 923576 at *3. P.E.C. does not challenge the court's findings that he committed the other three probation violations: failing to attend school every day and follow school rules; failing to participate in day treatment; and failing to comply with the electronic monitoring requirement. P.E.C.'s fourth issue is overruled.

**2.** We do not determine whether the defense of necessity may be raised in the context of alleged violations of juvenile probation and modification of a juvenile's disposition.

Based on the record before us, we hold that the trial court did not abuse its discretion in modifying P.E.C.'s juvenile disposition and committing him to the Texas Youth Commission. Accordingly, the judgment of the trial court is affirmed.