



# MEMORANDUM OPINION

No. 04-11-00911-CV

**IN THE INTEREST OF H.V.**, a Juvenile

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-JUV-01992
Honorable Carmen Kelsey, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:    September 12, 2012

AFFIRMED

H.V., a juvenile, appeals the trial court's disposition order committing him to the Texas Youth Commission (TYC). We affirm the trial court's judgment.

## BACKGROUND

H.V., fourteen years-old, pled true to an allegation that he engaged in delinquent conduct by possessing a prohibited weapon, namely brass knuckles, on the premises of a school. The trial court adjudged that H.V. had engaged in delinquent behavior, and after a disposition hearing ordered him committed to TYC for an indeterminate term. On appeal, H.V. challenges his commitment, arguing the evidence does not support the court's finding that neither of his

parents' homes could provide him with the quality of care and level of support and supervision necessary to meet the conditions of probation.

## STANDARD OF REVIEW

A juvenile court possesses broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent behavior. *In re P.E.C.*, 211 S.W.3d 368, 370 (Tex. App.—San Antonio 2006, no pet.). Absent an abuse of discretion by the trial court, a reviewing court will not disturb the juvenile court's disposition. *Id.* An abuse of discretion occurs when the trial court acts unreasonably or arbitrarily, or without reference to any guiding rules or principles. *In re K.J.N.*, 103 S.W.3d 465, 466 (Tex. App.—San Antonio 2003, no pet.). The guiding rules and principles in juvenile cases involving commitment outside the child's home are found in the Texas Family Code. The Family Code permits a trial judge to commit a child if: (1) it is in the child's best interest to be placed outside the home; (2) reasonable efforts have been taken to prevent or eliminate the need for the child's removal from the home; and (3) while in the home, the child cannot receive the quality of care and level of support and supervision needed to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i) (West Supp. 2012); *In re P.E.C.*, 211 S.W.3d at 370. In reviewing the juvenile court's disposition and the related findings, we view the evidence in the light most favorable to the court's ruling, and afford almost total deference to fact findings that are supported by the record. *In re K.T.*, 107 S.W.3d 65, 75 (Tex. App.—San Antonio 2003, no pet.). We review de novo the court's application of the law to the facts, and factual issues that do not involve credibility determinations. *Id.*

**ANALYSIS**

Here, the trial court made the required statutory findings under section 54.04(i), plus the following specific findings in support of its commitment order:

> paroled from the State of Georgia and sent to the State of Texas for a felony offense involving violence, robbery by intimidation; was in possession of a knife; gang activity in the past; aggressive and assaultive behavior in the past; and problems in school; concerned that the respondent may commit a new offense.

The trial court's findings are supported by documentary evidence in the record as well as testimony. The record contains a Harlandale Independent School District police report stating that on September 29, 2011, H.V. was in possession of a prohibited weapon, brass knuckles, on school premises in violation of Texas Penal Code section 46.03. *See* TEX. PENAL CODE ANN. § 46.03 (West 2011) (felony of the third degree). The pre-disposition report prepared by the Bexar County Juvenile Probation Department shows that H.V.'s history of delinquent conduct began when he was 12 years old or less, and details his history in Georgia, where he lived with his father until December 2010. Specifically, H.V.'s juvenile history in Georgia includes three adjudications: assault-bodily injury on March 27, 2010, for which he received probation; criminal trespass on June 30, 2010, for which his probation term was extended; and robbery by intimidation (knife) on November 29, 2010, for which he was committed and placed on parole. At the time of the instant offense, H.V. was on parole with the Georgia juvenile authorities. The report also states that H.V. admitted being involved with gangs in Georgia. The report recommended that, based on his prior history in Georgia, his aggression issues, and his behavioral problems within his mother's home, H.V. should be placed on probation for eighteen months in the custody of the Department, with several conditions including temporary placement in a residential facility. Leticia Wilson, a juvenile probation officer, testified that H.V. initially

had issues with fighting, writing gang style, and refusing to obey staff when he was first detained; however, H.V.'s behavior in detention has improved and he is attending classes.

At the disposition hearing, several witnesses testified, including both of H.V.'s parents. H.V.'s father, Ramiro, stated that he currently resides with his girlfriend and her daughters in Atlanta, Georgia. Ramiro confirmed that H.V. lived with him in Georgia immediately prior to moving to San Antonio in December 2010, and that H.V. committed the above offenses while living with him in Georgia. Ramiro testified that his work schedule and neighborhood safety have since improved, and that he would now be able to provide H.V. with more supervision through his girlfriend and one of her adult daughters. Ramiro is a driver and works between 50 and 60 hours per week. Ramiro stated his belief that H.V. needs psychological counseling, but is not a bad kid and will mature.

H.V.'s mother, Socorro, stated that she had no contact at all with H.V. during the years he lived in Georgia with his father. She did not know about H.V.'s problems in Georgia before he came to San Antonio. Socorro testified that H.V. was not a problem while he resided with her and her family which consists of her husband, a 16 year-old daughter, and three sons ranging in age from 3 years old to 9 years old. However, she stated that H.V.'s relationship with his step-father is not ideal because H.V. uses profanity and wears sagging pants, and the younger boys try to model their behavior after H.V.'s behavior; H.V. also gets aggressive when he gets mad. Socorro stated she and her extended family in San Antonio could provide H.V. with support if he was permitted to come home with her. The pre-disposition report showed that since living with his mother in San Antonio, H.V. has had four referrals to the Bexar County Juvenile Justice Department, including one for resisting arrest.

In addition, three of H.V.'s teachers testified. H.V.'s middle school football coach and teacher, Simon Aguirre, Jr., testified that H.V. was well behaved and tried hard in his classroom and on the football field; H.V. sometimes used profanity but could be corrected. H.V. did well on the football team in seventh grade, but was unable to continue playing football in eighth grade due to deficient grades. Aguirre was aware of the incident in which H.V. possessed brass knuckles on school premises, but did not believe H.V. would be a problem if he returned to his classroom as he had matured. Antonio Arevalo, the principal of the Harlandale Alternative School, testified that when H.V. moved to San Antonio he was initially enrolled in boot camp because there had been a "serious incident" in the state he came from; he was very respectful and completed the program, and then moved on to a traditional middle school. However, H.V. was later sent back to the disciplinary alternative education program where he continued to have conflicts with instructors; he was also classified as a special needs student and was on medication for anger issues. Arevalo stated he was able to assist H.V. through counseling, but also recalled that H.V. told him that he is a gangster and that is just what he is going to be, that there is nothing anyone can do to change it. Arevalo testified that in his opinion H.V. needs a lot of guidance and a very structured setting. Paul Pena, H.V.'s case manager at the middle school, testified that H.V. had difficulty focusing in class and used inappropriate language; he dealt with H.V. almost every day and felt he was improving and that playing football was a motivator. H.V. told Pena he came from a pretty tough area of Georgia where there were a lot of gangs. Pena stated his opinion that H.V. could mature and grow out of the inappropriate behavior he exhibited during middle school.

Based on our review of the record, which includes evidence that H.V. committed a third degree felony in San Antonio, has a previous history of adjudications in Georgia which includes

a violent felony for which he is currently on parole, and lacks supervision and support in both his parents' homes as evidenced, in part, by his continued delinquent conduct, we conclude there is sufficient evidence to support the order of commitment, and hold the trial court did not abuse its discretion. Accordingly, we affirm the trial court's judgment.

Phylis J. Speedlin, Justice