

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00448-CV

**IN THE MATTER OF B.W.M.C.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2013JUV00408
The Honorable Carmen Kelsey, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 26, 2014

AFFIRMED

In a single issue on appeal, B.W.M.C. contends the trial court abused its discretion when it modified an order of disposition and placed him outside of the home.  We affirm the trial court's modified order of disposition.

### BACKGROUND

On April 1, 2013, B.W.M.C., then age sixteen, entered a plea of true to one count of terroristic threat.  The trial court placed B.W.M.C. on probation for nine months, in the custody of his mother.  On May 20, 2013, the State filed a motion to modify disposition, alleging B.W.M.C. violated the terms of his probation when he tested positive for illegal drugs on two occasions and when he failed to attend school.  At a hearing on June 5, 2013, B.W.M.C. pled true to the allegations without a plea bargain agreement.

In keeping with the Juvenile Probation Department's recommendation, the State recommended placement outside of the home. The State entered the Juvenile Probation Department's Predisposition Report into evidence. The report stated that B.W.M.C. completed a previous term of probation in 2011. The report stated that during the current term of probation, B.W.M.C. tested positive for methamphetamines and amphetamines on April 22, 2013 and May 8, 2013. The report also stated that B.W.M.C. enrolled in a public high school on April 19, 2013 but never returned and was eventually withdrawn for poor attendance. The report also stated that B.W.M.C.'s family demonstrated little to no willingness to support him and that B.W.M.C. received inadequate parental supervision. B.W.M.C.'s stepfather, with whom he resides, was B.W.M.C.'s co-actor in the incident resulting in the charge of terroristic threat. B.W.M.C. admitted to abusing marijuana, methamphetamines, amphetamines, prescription pills, alcohol, cocaine, and heroine prior to his current probation term. B.W.M.C. also admitted to abusing alcohol, prescription medication, and methamphetamines during the current probation term. B.W.M.C. stated that he regularly slept in a shed in his backyard where he abused methamphetamines. B.W.M.C.'s mother was aware that he slept in the shed.

B.W.M.C.'s probation officer, Stephanie Gutierrez, testified that no counseling services had been provided to B.W.M.C. during the current term of probation. Gutierrez explained that B.W.M.C. was referred to an in-home counseling service, but B.W.M.C. and his mother told Gutierrez that no counselor ever contacted them. Gutierrez testified that B.W.M.C. indicated to Mid-Coast Assessment that he abused drugs approximately two to three times a week; however, Gutierrez testified that B.W.M.C. told her that he abused drugs on a daily basis. Gutierrez believed that Mid-Coast's recommendation of outpatient services was based on B.W.M.C.'s misrepresentation of his drug use. Gutierrez also testified that she had not encountered any other juveniles who had abused crystal meth.

B.W.M.C. argued that he should be returned to the custody of his mother. B.W.M.C. believed that his probation violations were caused by the Juvenile Probation Department's failure to provide him with counseling services. B.W.M.C.'s mother testified that she wanted B.W.M.C. to return home and believed that B.W.M.C.'s probation violations were caused by her recent medical issues. She testified that during early April 2013, she was admitted to the hospital for seven days following a surgery to partially amputate her leg. She testified that B.W.M.C. stayed with her the entire time in the hospital. B.W.M.C.'s mother believed that the surgery had been "real hard" on B.W.M.C. and believed "that's why he went and did what he did."

After hearing all of the testimony, the trial court extended B.W.M.C.'s probation until his eighteenth birthday and placed him in the custody of the chief probation officer for the primary purpose of assisting B.W.M.C. with his substance abuse problems.

### STANDARD OF REVIEW

A trial court has "broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct." *In re P.E.C.*, 211 S.W.3d 368, 370 (Tex. App.—San Antonio 2006, no pet.). A reviewing court will not disturb the trial court's modification of a juvenile's disposition absent an abuse of discretion. *Id.* A trial court abuses its discretion when it acts "unreasonably or arbitrarily and without reference to guiding rules and principles." *In re K.J.N.*, 103 S.W.3d 465, 466 (Tex. App.—San Antonio 2003, no pet.). In reviewing the trial court's disposition and findings, we "'view the evidence in the light most favorable to the trial court's ruling,' affording almost total deference to findings of historical fact that are supported by the record." *In re K.T.*, 107 S.W.3d 65, 75 (Tex. App.—San Antonio 2003, no pet.) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review de novo the trial court's determination of law, application of law to the facts, and factual issues that do not involve evaluation of witness credibility. *In re K.T.*, 107 S.W.3d at 75.

## DISCUSSION

In order for a juvenile to be placed outside of the home, the trial court must find that: (1) placement outside the home is in the juvenile's best interests; (2) reasonable efforts were made to prevent or eliminate the need for removal from the home; and (3) the juvenile, in the juvenile's home, cannot be provided the quality of care and level of support and supervision the juvenile needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i)(1) (West Supp. 2013). The trial court found that each of these statutory requirements were satisfied. Specifically, the trial court found that placement outside of the home was an appropriate disposition because B.W.M.C. had a severe substance abuse issue which required inpatient treatment to prevent B.W.M.C. from hurting himself or others. The trial court also found that B.W.M.C. had previously completed an extended term of probation and was not currently enrolled in school.

On appeal, B.W.M.C. argues that the continuation of probation at home would have been a more appropriate disposition, pointing to the Mid-Coast Assessment, which recommended outpatient services. B.W.M.C. argues that although he admittedly has a serious substance abuse problem, he is "coming to grips" with it. B.W.M.C. argues that the completion of his extended probation in 2011 demonstrates his ability to comply with the conditions of probation. B.W.M.C. also argues that the Juvenile Probation Department's failure to provide counseling as well as the stress of his mother's hospitalization contributed to his current probation violations. Lastly, B.W.M.C. contends that he has a sincere desire to change.

The record supports the trial court's finding that placement outside of the home for the purpose of drug treatment was a suitable disposition. We agree with the trial court that in-patient drug treatment was in B.W.M.C.'s best interests. B.W.M.C. acknowledges that he has a serious drug problem and admits to abusing a variety of substances including cocaine, heroin, methamphetamines, amphetamines, marijuana, and alcohol. This level of addiction is serious for

any person, especially someone not yet eighteen years old. Additionally, reasonable efforts were made to prevent removal from the home. Although B.W.M.C. had not yet received drug counseling during his current term of probation, he had completed a previous term of probation. During his current term of probation, B.W.M.C. demonstrated little effort to comply with the conditions of probation. B.W.M.C. admitted that he continued to abuse drugs, and despite enrolling in school, made no other effort to attend. Although B.W.M.C. points to his mother's medical issues to explain his drug use, he does not explain how her hospitalization in early April prevented him from attending school after he enrolled on April 19, 2013. *See In re K.L.N.*, 103 S.W.3d at 466 (immediate recidivism while under mother's care supported placement outside of the home).

Moreover, the challenge posed by medical issues faced by B.W.M.C's mother emphasizes, rather than negates, the need to remove B.W.M.C. from his home environment. Other evidence also supports the inadequacy of B.W.M.C.'s home environment, including his step-father's behavior involving the terroristic threat offense, the failure by B.W.M.C's mother to ensure that B.W.M.C. attended school, and her knowledge that B.W.M.C. was sleeping in the backyard shed, where he abused drugs. *See In re J.J.*, No. 03-05-00532, 2006 WL 1041138, at*3 (Tex. App.—Austin Apr. 20, 2006, no pet.) (mem. op., not designated for publication) (trial court did not abuse discretion when it placed juvenile outside in the home in a drug treatment facility where juvenile had used drugs at home while on probation). Accordingly, the trial court did not abuse its discretion, and B.W.M.C.'s sole point of error is overruled.

## CONCLUSION

The trial court's modified disposition order is affirmed.

Catherine Stone, Chief Justice