

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00297-CV

**IN THE MATTER OF F.A.S.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-JUV-01811
Honorable Carmen Kelsey, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  April 15, 2015

AFFIRMED

In a single issue, F.A.S. complains that the juvenile court abused its discretion by relying on flawed evidence to commit him to the Texas Juvenile Justice Department rather than ordering a less restrictive placement.  Because the juvenile court acted within its statutory discretion, we overrule F.A.S.'s issue and affirm the juvenile court's order.

### BACKGROUND

At age sixteen, F.A.S. entered a plea of true to two counts of burglary of a habitation.  After a disposition hearing under Juvenile Justice Code section 54.04, he accepted the conditions for probation and was placed on probation until his eighteenth birthday.  *See* TEX. FAM. CODE ANN. § 54.04 (West 2014).  After nine months, he completed a residential placement program and was released to his home for the remainder of his probation.  However, within a month of his release,

F.A.S. violated two conditions of his probation: he failed to comply with his curfew, and he failed to report to his probation officer. His probation officer warned him of the consequences of violating the conditions, including commitment to TJJD, but F.A.S. continued to violate the conditions. Four months after F.A.S.'s release, the State filed a motion to modify disposition alleging that F.A.S. failed to report to his probation officer as required and violated his curfew.

In a hearing to modify disposition under section 54.05, and without a plea agreement, F.A.S. pled true to the State's allegations. The juvenile court found, inter alia, F.A.S. had engaged in delinquent conduct, had violated two conditions of his probation, was in need of rehabilitation, and it was in F.A.S.'s best interest that he be placed outside his home. The juvenile court modified his disposition and committed him to TJJD.

### AUTHORITY TO MODIFY DISPOSITION

Under the Juvenile Justice Code, "a disposition based on a finding that the child engaged in delinquent conduct that violates a penal law of this state . . . of the grade of felony may be modified so as to commit the child to the Texas Juvenile Justice Department." TEX. FAM. CODE ANN. § 54.05(f); *accord In re J.P.*, 136 S.W.3d 629, 633 (Tex. 2004); *In re K.B.*, 106 S.W.3d 913, 915 (Tex. App.—Dallas 2003, no pet.). To modify the disposition, the trial court must conduct "a hearing to modify disposition [and] find[] by a preponderance of the evidence that the child violated a reasonable and lawful order of the court." TEX. FAM. CODE ANN. § 54.05(f); *In re P.E.C.*, 211 S.W.3d 368, 370–71 (Tex. App.—San Antonio 2006, no pet.); *In re K.B.*, 106 S.W.3d at 915. "[T]he statute allows a trial court to decline third and fourth chances to a juvenile who has abused a second one." *In re J.P.*, 136 S.W.3d at 633. To commit the child to TJJD, the court must make certain findings and include them in the order. TEX. FAM. CODE ANN. § 54.05(m); *see In re E.G.*, 212 S.W.3d 536, 538 n.2 (Tex. App.—Austin 2006, no pet.) (noting that the legislature added the findings requirement after *In re J.P.*, 136 S.W.3d 629 (Tex. 2004)).

## STANDARD OF REVIEW

"A juvenile court possesses broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct." *In re P.E.C.*, 211 S.W.3d at 370 (citing *In re K.J.N.*, 103 S.W.3d 465, 465–66 (Tex. App.—San Antonio 2003, no pet.)). We will not disturb the disposition unless our review shows the juvenile court abused its discretion. *See id.*; *In re K.B.*, 106 S.W.3d at 915. "The test for abuse of discretion . . . is a question of whether the court acted without reference to any guiding rules and principles" or its actions were "arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *accord In re P.E.C.*, 211 S.W.3d at 370.

## ANALYSIS

In his only issue, F.A.S. argues the juvenile court abused its discretion by ordering him committed to TJJD because the evidence supporting commitment was "made up" by the probation officer. He insists he progressed during his residential and home placements, and there was no need to progress to a higher level of sanctions.

At the hearing to modify disposition, F.A.S.'s mother and his probation officer testified. We review the witness testimony and documentary evidence considered by the juvenile court.

A.     **Predisposition Report**

During the hearing to modify disposition, the juvenile court, referring to the Predisposition Report offered by the State at the adjudication hearing and admitted without objection, noted the court had read the report. *See* TEX. FAM. CODE ANN. § 54.05(e) (authorizing the court to "consider written reports from probation officers"); *In re K.B.*, 106 S.W.3d at 915. F.A.S.'s referral history shows he has been referred for separate incidents of theft, resisting arrest, and burglary of a habitation. The report shows F.A.S. has a history of defying authority—sometimes accompanied by violent outbursts. For example, when F.A.S. was off his medications for his bipolar depressive

disorder, he tried to break down his mother's bedroom door. When the police responded, F.A.S. was agitated, uncooperative, took an aggressive stance toward the officer, and pushed the officer away from him. F.A.S. was charged with resisting arrest. After F.A.S. was released from the residential placement program, he left home without permission, stayed out past his curfew—sometimes all night, and was "hanging out with negative peers." When F.A.S.'s probation officer asked F.A.S. to sign the adjudication hearing summons, F.A.S. became very angry, started cursing, threw the papers into the bushes, and refused to sign the documents.

**B.      Probation Officer's Testimony**

At the hearing to modify disposition, Tim Nava testified to the following. He was F.A.S.'s probation officer. He discussed the conditions of probation with F.A.S., and F.A.S. specifically answered that he knew and understood the conditions of his probation. When F.A.S. was placed in the residential program, he was required to take his medication for bipolar disorder. After several months of struggling to comply with the program requirements, F.A.S. began to benefit from the counseling and services: his mood improved, he accepted rules and guidelines, and he reduced excess body weight. When asked by the court "[H]ow long did it take from the time he got there till the time his medication kicked in and improved his behavior?" Nava acknowledged he did not know when F.A.S. began taking the medication while in the residential placement. Nava stated that F.A.S. completed the program in about nine months, F.A.S. started improving about half-way through that period, and Nava admittedly "guessed" that F.A.S.'s improved behaviors started about five months into treatment.

F.A.S. was released to his home and his mother's care. She made doctor's appointments for F.A.S., but he refused to attend and he stopped taking his medications. Thereafter, F.A.S. began violating the conditions of his probation.

Nava told F.A.S. he could be committed to TJJD if he did not comply with the conditions, but F.A.S. stated he did not need a babysitter and he had no need for probation. He stated F.A.S. refused to accept responsibility for his actions, but admitted violating his curfew, missing probation appointments, failing to take his medications, and smoking marijuana.

Nava acknowledged F.A.S. made progress during his probation, and that the conditions F.A.S. violated were not criminal offenses. He opined that TJJD would help F.A.S. rehabilitate, there was not enough time remaining before F.A.S. turned eighteen for non-TJJD services to help him rehabilitate, and, with only community supervision, F.A.S. would be a danger to himself and others.

## C.    Mother's Testimony

F.A.S.'s mother testified to the following. She is F.A.S.'s birth mother and has raised him from infancy. She felt he did well in residential placement, and she wanted the court to give him a placement again. She stated F.A.S.'s most pressing need was for "structure," and that he needed help to ensure he would take his medications.

## D.    Juvenile Court's Findings

In the hearing to modify disposition, the juvenile court noted it had previously found that F.A.S. engaged in delinquent conduct—burglary of a habitation—which is "of the grade of felony." *See* TEX. FAM. CODE ANN. § 54.05(f); *In re J.P.*, 136 S.W.3d at 633. It noted F.A.S. admitted he was on probation, and he pled true to violating two conditions of his probation. *See* TEX. FAM. CODE ANN. § 54.05(f); *In re P.E.C.*, 211 S.W.3d at 370–71.

It found that F.A.S. violated conditions of his probation. *See* TEX. FAM. CODE ANN. § 54.05(f); *In re P.E.C.*, 211 S.W.3d at 370–71; *In re K.B.*, 106 S.W.3d at 915. It found each of the required findings under section 54.05(m) including F.A.S.'s best interests; the reasonable efforts made on his behalf; and the insufficient care, support, and supervision in his home

placement that were otherwise necessary for F.A.S. to comply with the conditions of his probation. *See* TEX. FAM. CODE ANN. § 54.05(m); *In re P.E.C.*, 211 S.W.3d at 370. It also stated that TJJD would help F.A.S. take his medications and give him more time to receive rehabilitative services.

## E.     Evidence Supporting Commitment to TJJD

The juvenile court read the Predisposition Report and heard Nava and F.A.S.'s mother testify about F.A.S.'s actions.

The evidence shows that under his mother's supervision while living at home on probation, F.A.S. repeatedly failed to keep required appointments with his probation officer, he repeatedly violated his curfew, he repeatedly refused to take his medications, he continued to display anger management issues, and by his express rejection of his need for probation, he refused to accept responsibility for his actions.

Although Nava testified the records for F.A.S.'s residential placement did not show when F.A.S. began taking his medication or exactly when his behavior began improving, and Nava admitted he guessed that F.A.S.'s behavior began improving about five months into the residential placement, the juvenile court was free to consider all the evidence including the predisposition report, F.A.S.'s mother's testimony, and Nava's other testimony. We conclude there is much evidence, including that which we have previously recited, that is unquestionably not "made up" and which supports each finding by at least a preponderance of the evidence. *See* TEX. FAM. CODE ANN. § 54.05(j); *In re P.E.C.*, 211 S.W.3d at 370–71.

Further, the juvenile court did not have to give F.A.S. another less-restrictive residential placement before committing him to TJJD. *See In re J.P.*, 136 S.W.3d at 633. Moreover, the evidence shows the court's disposition complied with the applicable statutory requirements; it was not arbitrary or unreasonable, and was not made "without reference to any guiding rules and principles." *See Downer*, 701 S.W.2d at 241–42; *In re P.E.C.*, 211 S.W.3d at 370.

## CONCLUSION

In his appeal, F.A.S. argues the evidence supporting the disposition order was merely "made up" by the probation officer, lesser sanctions than commitment to TJJD were appropriate, and the juvenile court abused its discretion by committing F.A.S. to TJJD. Having reviewed the evidence, we conclude it is sufficient to support by a preponderance of the evidence each of the findings recited by the juvenile court, and the court's order modifying F.A.S.'s disposition to commitment to TJJD. Because we conclude the juvenile court acted within its discretion, we overrule F.A.S.'s sole issue, and we affirm the juvenile court's order.

Patricia O. Alvarez, Justice