

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00037-CV

———————————————

IN THE MATTER OF J.H.L.

On Appeal from County Court at Law
Cooke County, Texas
Trial Court No. JV936-20

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Juvenile Appellant J.H.L. appeals the trial court's order granting the State's motion to modify disposition and committing him to the Texas Juvenile Justice Department for a period not to exceed his nineteenth birthday. In one issue, J.H.L. argues that the trial court abused its discretion by committing him to the TJJD because (1) he had mental health issues, (2) his outbursts could be attributed to the aggravating circumstances caused by his COVID isolation, and (3) he had not committed any new offenses. We hold that the trial court did not abuse its discretion because (1) the evidence was that J.H.L. had no mental health issues, (2) the COVID isolation did not excuse his behavior, and (3) committing a new offense was not a prerequisite to modifying his disposition or to committing him to the TJJD. We affirm.

## II. BACKGROUND

### A. The trial court places J.H.L. on probation for engaging in delinquent conduct.

J.H.L. had previously been adjudicated of having engaged in delinquent conduct by committing, among other offenses, the state-jail felonies of burglary of a building and the unauthorized use of a vehicle.[1]  *See* Tex. Fam. Code Ann.

---

[1]The appellate record is sparse. The record does not include the adjudication and disposition orders or the terms and conditions of J.H.L.'s probation. We take as true statements in the briefs unless the opposing party contends otherwise. *See Garza*

§ 51.03(a)(1) (defining "delinquent conduct"); Tex. Penal Code Ann. §§ 30.02(c)(1) (providing that burglary of a building is a state-jail felony), 30.07(b) (providing that unauthorized use of a vehicle is a state-jail felony). The trial court placed J.H.L. on probation.

## B. The State files a motion to modify J.H.L.'s disposition.

Subsequently, the State filed a motion to modify J.H.L.'s disposition and requested that he be committed to the TJJD because he had not successfully completed The Oaks program,[2] as ordered by the court:

> [The State] would show to the Court that she has good reason to believe and does believe and charge that [J.H.L.] has violated the reasonable and lawful terms and conditions of the probation, to-wit:
>
> 1. On the 12th day of October, 2021, I, [J.H.L.], violated my probation, by being terminated from Rite of Passage/The Oaks program. Termination from Rite of Passage/The Oaks was for ongoing major rule violations and unsuccessful completion of the program.
>
> Said violations of the conditions of probation were committed while the said probation was in full force and effect.

---

*v. Reed*, No. 14-08-00211-CV, 2009 WL 4270888, at *1 (Tex. App.—Houston [14th Dist.] July 7, 2009, no pet.) (mem. op.) (citing Tex. R. App. P. 38.1(g)).

[2]The trial court and the parties were presumably familiar with The Oaks, but we are not. From the testimony of the probation officer, The Oaks appears to be a "transitional facility designed to train individuals to comply with the rules and to be able to develop some responsibility."

**C. The State presents evidence at the hearing on its motion to modify.**

At the hearing on the State's motion, J.H.L.'s probation officer testified that J.H.L. had initially been placed in the Denton County Post Adjudication program on August 20, 2020, but—due to ongoing rule violations—he was terminated on March 10, 2021. J.H.L. was later placed at The Oaks on April 22, 2021.

The probation officer explained that The Oaks was a transitional facility that was designed to train a juvenile to succeed in a later placement, and in J.H.L.'s case, the plan was to transition him into a vocational-training school. J.H.L.'s behavioral issues, however, precluded him from successfully completing The Oaks program. The probation officer stated that, given the placements that J.H.L. had already exhausted, the only remaining available placement was the TJJD. J.H.L.'s parents could not provide adequate supervision, so the probation officer did not recommend returning J.H.L. to them; the probation officer explained that in the past, shortly after J.H.L. had been released to his parents, J.H.L. had committed new offenses.

The Oaks' discharge summary indicated that J.H.L.'s behavioral problems might have been related to COVID restrictions:

> [I]n the past two weeks while the facility has been in quarantine due to COVID, [J.H.L.'s] behavior has become more aggressive. He is not responding to treatment staff and [is not] using any of his coping skills for his anger that he has learned while he has been at The Oaks[.] [B]ehaviors that he is currently displaying are kicking his doors, throwing chairs at his desk, refusing to go up to his room for hours at a time, and consistently cursing at his staff.

4

The probation officer acknowledged that COVID isolation might have contributed to J.H.L.'s poor behavior and, further, that J.H.L.'s being placed in isolation was not J.H.L.'s fault.

The probation officer also acknowledged that J.H.L. had not committed any new criminal offenses since he had been placed on probation. Qualifying his answer, the probation officer added that J.H.L. would, however, do things like curse, throw furniture, and fight with other students.

According to the probation officer, J.H.L. had above average intelligence and was not mentally disabled. The Oaks' discharge summary stated that J.H.L. had been working on regulating his behavior, controlling his impulses, and identifying solutions for his anger. The discharge summary added that although J.H.L. had made progress, he had continued to "display aggression towards authority figures."

During final arguments, defense counsel asserted that J.H.L. was taking medications for mental health issues. The trial court, however, responded that he was not aware of any mental health conditions. The discharge summary stated that J.H.L. would "benefit from treatment of symptoms through psychotropic medication."

In short, the probation officer testified that J.H.L. had failed to transition out of The Oaks program through a cumulation of multiple events. The probation officer asserted that every effort had been made to put J.H.L. in a placement that would have allowed him to transition out of the probation process, but J.H.L. had failed.

**D. The trial court orders J.H.L. committed to the TJJD, denies J.H.L.'s motion for new trial and motion in arrest of judgment, and files findings of fact and conclusions of law.**

After the hearing, the trial court signed an order committing J.H.L. to the TJJD. Within the order, the trial court provided the following reasons for modifying J.H.L.'s disposition:

- J.H.L. violated the terms of his probation;

- J.H.L. had not responded to the probation services that had been offered;

- further action, consequences, and treatment were warranted based on the type and nature of J.H.L.'s violations;

- the underlying case was serious, and the probation violations warranted a modification to the probation rules for that case;

- an additional disposition would help to protect and rehabilitate J.H.L.;

- an additional disposition would help protect the community; and

- the risk and needs assessment warranted an additional disposition.

J.H.L. filed a timely motion for new trial and a motion in arrest of judgment. After a hearing, the trial court overruled J.H.L.'s motions.

Later still, the trial court signed and filed its findings of facts and conclusions of law, which provided:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 4, 2021, a hearing was conducted on the [State's] Motion to Modify.

6

During that hearing it was established that [J.H.L.], since March of 2020, had been involved and adjudicated on a series of cases.

As a result of adjudications, [which] were contested, [J.H.L.] was placed under the supervision of the Cooke County Juvenile Probation Office.

During supervision, on August 20, 2020, [J.H.L.] was placed in the Denton County Post Adjudication program, which [J.H.L.] failed to complete successfully.

[J.H.L.] was again placed in a program at The Oaks program in Brownwood, Texas[,] on April 22, 2021, which he also failed to successfully complete.

The failure in the programs w[as] because of [J.H.L.'s] failing to abide by the rules of the program.

[J.H.L.] admitted, during his Motion for New Trial and Motion in Arrest of Judgement, that he failed in the programs because he was not used to following rules.

[J.H.L.] violated the terms of his supervision and was ordered to placement in the TJJD.

There was no new evidence presented at the Motion for New Trial and Motion in Arrest of Judgement that supported the granting of the motions.

Conclusions of Law:

The Court found regarding the Motion to Modify that [J.H.L.] violated the terms of his supervision on multiple occasions.

The unrefuted testimony of the Juvenile Probation Officer supported the allegations of the violations and recommended that [J.H.L.] be rehabilitated in the programs at [the] TJJD.

The Court twice ordered a placement of [J.H.L.], and twice [J.H.L.] failed to complete the programs because of his own conduct.

The placement of [J.H.L.] to the TJJD was the only alternative left for the rehabilitation of [J.H.L.].

During [J.H.L.'s] Motion for New Trial and Motion in Arrest of [Judgment,] no new evidence was presented to support the motions.

## III. STANDARD OF REVIEW

Juvenile courts have broad power and discretion in determining the suitable disposition for children found to have engaged in delinquent conduct. *In re J.P.*, 150 S.W.3d 189, 191 (Tex. App.—Fort Worth 2003) (per curiam) (mem. op.), *aff'd*, 136 S.W.3d 629 (Tex. 2004). This is especially so in hearings to modify disposition. *Id.* We will not reverse the juvenile court's ruling unless it abused its discretion. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). A court abuses its discretion when it acts (1) without reference to any guiding rules or principles or (2) in an unreasonable or arbitrary manner. *In re P.E.C.*, 211 S.W.3d 368, 370 (Tex. App.—San Antonio 2006, no pet.). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *C.J.H.*, 79 S.W.3d at 702. Furthermore, an abuse of discretion does not occur provided some evidence of substantive and probative character exists to support the trial court's decision. *Id.*

## IV. DISCUSSION

### A. Section 54.05(f) of the Texas Family Code applies to J.H.L.'s modification.

Under the Texas Family Code, the trial court may modify a juvenile's prior disposition and commit the juvenile to the TJJD if (1) the juvenile received an earlier disposition based on delinquent conduct that, if he had been tried as an adult, would

have constituted a felony and (2) the trial court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful court order:

> (f) Except as provided by Subsection (j),[3] a disposition based on a finding that the child engaged in delinquent conduct that violates a penal law of this state or the United States of the grade of felony may be modified so as to commit the child to the Texas Juvenile Justice Department or, if applicable, a post-adjudication secure correctional facility operated under Section 152.0016, Human Resources Code, if the court after a hearing to modify disposition finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court. . . .

Tex. Fam. Code Ann. § 54.05(f); *see J.P.*, 150 S.W.3d at 190–91; *In re J.M.*, 25 S.W.3d 364, 367 (Tex. App.—Fort Worth 2000, no pet.).

## B. The trial court relied on and followed Section 54.05(f) of the Texas Family Code.

In J.H.L.'s sole issue, he argues that the trial court abused its discretion by committing him to the TJJD because (1) he had mental health issues, (2) his outbursts could be attributed to the aggravating circumstances caused by his COVID isolation, and (3) he had not committed any new offenses. We are not persuaded.

Regarding J.H.L.'s argument that he had mental health issues, the evidence showed the contrary—that he did not have any mental health issues. The probation officer, who was the only witness who testified, asserted that J.H.L. was "a smart kid,"

---

[3]Subsection (j) deals with juveniles who have received a determinate sentence of not more than ten years and who have been placed on probation. *See* Tex. Fam. Code Ann. §§ 54.04(q), 54.05(j). Our record does not show that J.H.L. received a determinate sentence that the juvenile court probated.

and when he was asked if J.H.L. was mentally disabled, he responded, "No." Rather, the evidence showed that J.H.L.'s issues were behavioral. To the extent the record suggested that J.H.L. was taking medications, such as the discharge summary's comment that J.H.L. would "benefit from treatment of symptoms through psychotropic medication," those medications appear to have been for behavioral issues, such as inadequate impulse control. The probation officer described The Oaks as a transitional facility designed to prepare a juvenile for a later vocational-training placement. From this, the record suggests that The Oaks was designed to address behavioral issues. Although The Oaks' discharge summary refers to an "attached medical summary," no medical summary was attached. The discharge summary—at least the portion of the discharge summary that we have—does not indicate that J.H.L. was taking any medication. In any event, where, as here, the record is unclear, we must defer to the trial court's determination that J.H.L. had no mental health issues. *See C.J.H.*, 79 S.W.3d at 702.

Turning to J.H.L.'s contention that the COVID isolation restrictions may have taxed his ability to control his behavior, the evidence suggested that that might have been true. During the modification hearing, defense counsel asked the probation officer: "Based on your training and experience do you believe that someone who is placed in isolation could suffer ill effects if they already have an underlying mental health condition?" And the probation officer answered, "That could be a possibility." However, even if true, the COVID restrictions did not excuse his behavior. To

10

remain in The Oaks, he had to comply with The Oaks' COVID restrictions, and he did not.[4]

Next, J.H.L. correctly notes that he was not adjudicated of having committed any new offense. When modifying a disposition to commit a juvenile to the TJJD, however, committing a new offense is not a prerequisite. *See* Tex. Fam. Code Ann. § 54.05(f).

Finally, within his brief, J.H.L. also contends that the trial court failed to comply with Section 54.04(i)(1) of the Texas Family Code, which provides:

> (i) If the court places the child on probation outside the child's home or commits the child to the Texas Juvenile Justice Department, the court:
>
> > (1) shall include in its order its determination that:
> >
> > > (A) it is in the child's best interests to be placed outside the child's home;
> > >
> > > (B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and
> > >
> > > (C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation; . . . .

---

[4]This argument resembles a "true but" plea in criminal revocation proceedings. "A 'true but' plea appears to be criminal law vernacular for when a defendant pleads true to the State's allegations but argues mitigating circumstances or requests leniency in sentencing." *Criado v. State*, Nos. 02-21-00104-CR, 02-21-00105-CR, 2022 WL 2071791, at *3 (Tex. App.—Fort Worth June 9, 2022, no pet. h.) (mem. op., not designated for publication).

Tex. Fam. Code Ann. § 54.04(i)(1)(A)–(C). Section 54.04(i), however, applies to original dispositions. J.H.L. was not before the court for an original disposition; rather, he was before the court on the State's motion to modify an earlier disposition. Section 54.05(f) applies to modification proceedings. *See J.P.*, 150 S.W.3d at 190; *see also In re J.R.D.*, No. 07-21-00174-CV, 2022 WL 2237838, at \*2 n.3 (Tex. App.—Amarillo June 22, 2022, no pet. h.) (mem. op.); *In re H.G.*, 993 S.W.2d 211, 214 (Tex. App.—San Antonio 1999, no pet.).

When the evidence is measured by what is required under the Texas Family Code, it showed that J.H.L. had been previously adjudicated of engaging in delinquent conduct of a felony level and that he had violated a reasonable and lawful order of the court by not successfully completing The Oaks program. *See* Tex. Fam. Code Ann. § 54.05(f). Thus, the trial court acted (1) with reference to the guiding rules and principles and (2) reasonably, given J.H.L.'s history and the absence of other options. *See P.E.C.*, 211 S.W.3d at 370. We hold that the trial court did not abuse its discretion by committing J.H.L. to the TJJD.

We overrule J.H.L.'s single issue.

## V. CONCLUSION

Having overruled J.H.L.'s sole issue, we affirm the trial court's order modifying J.H.L.'s disposition and committing him to the TJJD.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  August 11, 2022