

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00876-CV

**IN THE MATTER OF R.D.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-JUV-01230
The Honorable Carmen Kelsey, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  November 12, 2014

AFFIRMED

A jury found appellant R.D., a juvenile, engaged in delinquent conduct by committing the

offense of burglary of a habitation.  After a disposition hearing, the trial court ordered R.D. placed

in the care, custody, and control of his mother for twelve months, under the supervision of the

Bexar County Juvenile Probation Department.  On appeal, R.D. raises two points of error,

contending: (1) the evidence is legally insufficient to support the delinquency finding; and (2) the

trial court erred in denying his motion to suppress.[1]  We affirm the trial court's judgment.

---

[1] R.D. seems to raise two separate points of error regarding the sufficiency of the evidence.  In point of error one, he specifically contends the evidence is legally insufficient to support his conviction.  Then, as part of his second point of error, he contends the trial court erred in denying his motion for directed verdict, as well as challenging the ruling on the motion to suppress.  In juvenile cases, with regard to the adjudication phase, we review the sufficiency of the evidence under the same standard applicable in criminal cases.  *In re K.T.*, 107 S.W.3d 65, 71 (Tex. App.—San Antonio 2003, no pet.); *In re T.K.E.*, 5 S.W.3d 782, 784–85 (Tex. App.—San Antonio 1999, no pet.).  In criminal cases, a challenge to the denial of a motion for directed verdict is treated as a challenge to the legal sufficiency of the evidence and is reviewed under the standard applicable to a legal sufficiency challenge.  *Orellana v. State*, 381 S.W.3d

## BACKGROUND

The evidence showed that while they were away from home, April and Roy Medellin received a phone call from a neighbor who claimed someone was burglarizing the Medellin home. Ms. Medellin immediately called her cousin, Stephanie Correa, who lived near the Medellin home, and asked Ms. Correa and her husband, Raymond Correa, to investigate the claim. Ms. Medellin then called the police.

The Correas were first to arrive at the Medellin home. Ms. Correa went to the front of the house, and Mr. Correa went to the back. According to their testimony, they both could hear noises coming from inside the house. Mr. Correa saw two young men crawl out of a window at the back of the house. An altercation ensued, and one of the young men jumped over a fence and escaped. The other young man, later identified as R.D., ran around to the front of the house. Ms. Correa threw a small metal bar at R.D. as he was fleeing and struck him on his lower leg. Mr. Correa came within two feet of the young man, and Ms. Correa was almost pushed off the front step as R.D. ran by. R.D. was able to evade the Correas. Both Mr. and Ms. Correa identified R.D. at trial as one of the young men who was inside the Medellin home. With some discrepancies in the exact colors of the young men's clothes, both testified the young men were wearing shorts and one was wearing a striped shirt.

After R.D. fled, Mr. Correa drove around looking for him and his companion. Mr. Correa stated he found them outside of a home in the neighborhood, but testified they were wearing different clothes. Officer Gabriel Mendoza arrived at the Medellin home and was told Mr. Correa had found the alleged perpetrators at another home in the neighborhood.

---

645, 652 (Tex. App.—San Antonio 2012, pet. ref'd); *Sony v. State*, 307 S.W.3d 348, 353 (Tex. App.—San Antonio 2009, no pet.) (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)). Accordingly, we will review R.D.'s complaints as to legal sufficiency and the directed verdict as a single legal sufficiency challenge. *See Orellana*, 381 S.W.3d at 652.

Officers went to the home where Mr. Correa claimed to have spotted the two perpetrators. Mr. Correa and three young men were taken back to the Medellin residence. Law enforcement personnel separated the Correas, placing each in a separate police car. Thereafter, the three young men were shown to the Correas in one-on-one show ups. The Correas were advised that simply because they were shown a specific person did not necessarily mean the person committed a crime. Mr. and Mrs. Correa each identified R.D. as one of the young men that emerged from the Medellin home. Mr. Correa testified he was one hundred percent certain, identifying R.D. by his facial features, earrings, and haircut. Mrs. Correa testified she was sixty to seventy percent sure the young man she saw at the Medellin home was R.D., basing her identification on her encounter with him and an earring he was wearing. The Correas and relevant law enforcement personnel testified no improper influence or suggestion was used in the identification process.

The Medellins testified their air conditioning unit was removed from a window as an entry point for R.D. and his partner. The window unit's removal caused structural damage to the window sill and damaged an electrical outlet. The couple testified many of the drawers in the home were rifled through, pillowcases were taken from the bedroom to the front of the home, and things were strewn about. However, nothing was taken.

Ultimately, the jury found R.D. engaged in delinquent conduct by committing a burglary of a habitation. After disposition, R.D. perfected this appeal.

## ANALYSIS

As noted in the introduction, R.D. raises two complaints on appeal. First, he challenges the sufficiency of the evidence to support the jury's delinquency finding based on the burglary. Second, he complains the trial court erred in denying his motion to suppress.

### *Legal Sufficiency*

R.D. first complains the evidence is legally insufficient to support the jury's finding of "true" with regard to the charge of burglary of a habitation. More specifically, he contends the evidence was legally insufficient to establish R.D.'s: (1) identity as one of the young men who entered the Medellin home, and (2) intent to burglarize the home.

### *Standard of Review*

As previously noted, with regard to the adjudication phase in a juvenile matter, we review the sufficiency of the evidence under the standard applicable in criminal cases. *K.T.*, 107 S.W.3d at 71; *T.K.E.*, 5 S.W.3d at 784–85. We review a legal sufficiency challenge under the standard announced by the Supreme Court in *Jackson v. Virginia. Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Orellana*, 381 S.W.3d at 652 (quoting *Mayberry*, 351 S.W.3d at 509); *see Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. We must resolve any inconsistencies in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). Thus, in analyzing the legal sufficiency of the evidence, this court must determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Mayberry*, 351 S.W.3d at 509 (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)); *see Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (holding standard of review is same for both direct and circumstantial cases).

When reviewing the sufficiency of the evidence, we must defer to the jury's weighing of the evidence, resolution of conflicts in the testimony, and assessment of credibility. *Brooks*, 323 S.W.3d at 899; *Orellana*, 381 S.W.3d at 653 (citing *Jackson*, 443 U.S. at 319). We cannot reweigh the evidence or substitute our judgment for that of the jury. *Orellana*, 381 S.W.3d at 653 (citing *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to their testimony, and the jury may accept or reject all or any portion of a witness's testimony. *Orellana*, 381 S.W.3d at 653 (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). The jury maintains the power to draw reasonable inferences from basic facts to ultimate facts; and their sole province is to reconcile any evidentiary conflicts. *Orellana*, 381 S.W.3d at 653 (citing *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995); *Welch v. State*, 993 S.W.2d 690, 693–94 (Tex. App.—San Antonio 1999, no pet.)).

### *Application*

To support the jury's finding of "true" to the burglary of a habitation allegation, the State had to prove R.D. intentionally or knowingly, with intent to commit theft, entered the Medellin home without the owner's consent. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). R.D. contends the State failed to establish he was one of the young men in the Medellin home or that he intended to take anything from it.

In support of his contentions, R.D. points out that other than the testimony from the Correas, there is no evidence establishing he was one of the young men who entered the Medellin home. He notes his fingerprints were not found in the home, there was no testimony that any footprints outside the home matched shoes he owned, and he was not found to be in possession of any property taken from the Medellin home. In fact, he points out the Medellins admitted no

property was taken from the home. Thus, according to R.D., there is no evidence of identity or intent to commit theft. We disagree.

As to intent in a burglary prosecution, Texas courts, including this court, have long held specific intent to commit theft may be inferred from the circumstances. *Stine v. State*, 300 S.W.3d 52, 57 (Tex. App.—Texarkana 2009, pet. ref'd, untimely filed) (citing *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989)); *see Simmons v. State*, 590 S.W.2d 137, 138 (Tex. Crim. App. [Panel Op.] 1979); *Bailey v. State*, 722 S.W.2d 202, 204 (Tex. App.—San Antonio 1986, no writ). Moreover, it is not necessary that property actually be taken for the jury to conclude the defendant intended to commit theft. *Jones v. State*, 418 S.W.3d 745, 747 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Ortega v. State*, 626 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1981)).

We hold the evidence in this case was legally sufficient to establish identity and intent. The Correas testified they saw R.D. exiting the Medellin home. According to their testimony, it was still light outside when they saw R.D. leave the house. Further, Ms. Correa testified R.D. ran right by her, and Mr. Correa stated he saw both young men jump from the window. They separately identified R.D. at the scene as one of the young men who came out of the Medellin house through the window from which the air conditioning unit had been removed. It is true the lighting at the scene during the one-on-one show up was less than optimal and Ms. Correa was only sixty to seventy percent sure of her identification. However, these are issues relating to the weight of Ms. Correa's testimony and the credibility of the identification, which are to be resolved by the jury. *See Brooks*, 323 S.W.3d at 899; *Orellana*, 381 S.W.3d at 653.

As to Mr. Correa, however, he specifically testified he was one hundred percent certain R.D. was one of the young men who left the Medellin house through the window. He testified to close contact with R.D., struggling with him at the back of the house. Admittedly, there are some discrepancies in his testimony when compared with his wife's, but on whole, these discrepancies

are not such that a jury could not rationally resolve them in favor of a finding that R.D. was one of the men who entered the Medellin home and then attempted to escape when the Correas arrived. *See Gonzales*, 330 S.W.3d at 694. That the young men were wearing different clothes when Mr. Correa located them does not impugn the testimony provided by the Correas. The jury could have reasonably inferred the young men changed clothes to avoid identification. *See Orellana*, 381 S.W.3d at 653.

It is true no property belonging to the Medellins was taken. However, this is not necessary to support a finding of intent to steal. *See Jones*, 418 S.W.3d at 747. The Medellins testified the air conditioning unit in a window was removed to allow the thieves ingress into the home. The removal damaged the home. There was testimony that drawers in the home were opened and rummaged through by the thieves, as if they were looking for items to steal. There was also testimony that pillowcases were moved from the bedroom to the front of the house, permitting an inference they were placed there to allow transport of items to be stolen. From this evidence, the jury could have rationally inferred the young men entered the home without consent, intending to steal items from the Medellin home. *See Orellana*, 381 S.W.3d at 653; *see also Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (holding evidence sufficient to sustain theft conviction where defendant entered home through broken window and fled when interrupted).

Accordingly, we hold, after viewing the evidence in the light most favorable to the jury's finding, there was sufficient evidence for the jury to conclude beyond a reasonable doubt R.D. was one of the persons who entered the Medellin home without consent and with the intent to commit theft. *See Orellana*, 381 S.W.3d at 652. We therefore overrule R.D.'s first point of error.

### *Motion to Suppress*

In his second point of error, R.D. claims the trial court erred in denying his motion to suppress. In his brief, he asserts the motion should not have been denied because: (1) the police

lacked probable cause to detain or arrest R.D.; and (2) the police used an unnecessarily suggestive identification procedure to obtain an identification of R.D. from the on-scene witnesses, thereby tainting the in-court identification.[2] However, the actual argument in the brief relates only to R.D.'s complaint about the trial court's failure to suppress the in-court identification by the Correas based on an allegedly suggestive pretrial identification procedure. There is no argument, i.e., application of the law to the specific facts, relating to his allegation of an absence of probable cause to detain or arrest. Rather, R.D. merely cites to general authority that states what is required to establish probable cause. He does not apply this law to the facts relating to his detention and arrest. Accordingly, we hold this portion of R.D.'s complaint has been waived due to an absence of briefing, and we decline to address it. *See, e.g., Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003) (holding appellant waived appellate complaint regarding denial of motion to suppress where he failed in his brief to apply law to facts as required by Rule 38.1 of Texas Rules of Appellate Procedure); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (holding that when defendant fails to cite supporting authority, nothing is presented for appellate review).

### *Standard of Review*

When reviewing a motion to suppress in a juvenile case, we use the same standard applicable to suppression motions in adult criminal cases. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002). In adult criminal cases, we review a ruling on a motion to suppress for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Our review is bifurcated. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.

---

[2] The State contends this issue has not been preserved for our review because appellant failed to obtain an adverse ruling on his motion to suppress. We disagree. First, the disposition order was signed November 12, 2013, and an order denying R.D.'s motion to suppress was signed October 30, 2013. Accordingly, contrary to the State's allegation, the motion to suppress was denied prior to the conclusion of the trial. Moreover, the reporter's record reflects the trial court orally denied the motion to suppress prior to closing arguments. Accordingly, we hold the trial court's denial of R.D.'s motion to suppress has been preserved for appellate review.

Crim. App. 1997). We give almost total deference to the trial court's resolution of questions of historical fact and mixed questions of law and fact that depend on weight or credibility, but we review de novo the trial court's application of the law to the facts. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011). Whether an impermissibly suggestive pretrial identification tainted a witness's in-court identification is a mixed question of law and fact subject to de novo review. *Loserth v. State*, 963 S.W.2d 770, 773–74 (Tex. Crim. App. 1998);

When, as here, the record is silent as to the reasons for the trial court's denial, i.e., there are no explicit findings of fact, and neither party requested findings and conclusions, we imply the necessary fact findings to support the trial court's decision if there is evidence to support them. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We must view the evidence in the light most favorable to the trial court's ruling and reverse only if the ruling is outside the zone of reasonable disagreement. *Id.*

*Application*

An in-court identification is inadmissible if it was tainted by an impermissibly suggestive pretrial identification. *Hamilton v. State*, 300 S.W.3d 14, 18 (Tex. App.—San Antonio 2009, pet. ref'd) (quoting *Loserth*, 963 S.W.2d at 771–72). To determine whether a trial court correctly admitted an in-court identification, we use a two-step analysis, considering the totality of the circumstances, and determine whether (1) the pretrial identification was impermissibly suggestive, and if so, (2) whether the suggestive pretrial identification gave rise to a substantial likelihood of irreparable misidentification at trial. *Hamilton*, 300 S.W.3d at 18. The burden is on the defendant to show by clear and convincing evidence the in-court identification is unreliable. *Id.*

As this court and the court of criminal appeals has stated, reliability is the key issue in determining whether the trial court erred in admitting the in-court identification. *Id.* (citing *Loserth*, 963 S.W.2d at 772). "Testimony is reliable if the totality of the circumstances reveals no

substantial likelihood of misidentification despite a suggestive pretrial procedure." *Hamilton*, 300 S.W.3d at 18 (quoting *Loserth*, 985 S.W.2d at 543). In determining the reliability of the in-court identification, we must weigh the non-exclusive factors set out in *Neil v. Biggers*, 409 U.S. 188 (1972), against the corrupting effect of the suggestive pretrial procedure. *Hamilton*, 300 S.W.3d at 18. Under *Biggers*, we look at: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.* at 18–19. These factors are issues of historical fact, and we therefore consider them "deferentially in the light most favorable to the trial court's ruling." *Id.* at 19. As noted above, "[w]e apply a de novo review in weighing the factors against the corrupting effect of the suggestive pretrial procedure." *Id.*

R.D. alleges the in-court identification was tainted by an unnecessarily suggestive pretrial identification procedure. To support his complaint, R.D. points only to the cross-examination of Ms. Correa in which she admitted the one-on-one pretrial identification took place at approximately 8:00 p.m. or 9:00 p.m. and it was dark at the time. Ms. Correa testified each of the three young men apprehended by police were individually presented for her identification in front of a police car with its headlights on. We will apply the *Biggers* factors and weigh them against what R.D. contends was the unnecessarily suggestive pretrial identification procedure.

In this case, Mr. and Ms. Correa had ample time to view R.D. after he came out of the Medellin home while it was still light outside. Mr. Correa engaged in a physical altercation with R.D., and R.D. ran directly in front of Ms. Correa while fleeing the scene. Although it was dark when Ms. Correa identified R.D. at the scene, R.D. was illuminated by the headlights from the officers' vehicles. Mr. and Ms. Correa were likely paying a significant amount of attention when they first saw R.D. because they knew when they arrived at the Medellin home that there was

possibly a burglary in progress. Ms. Correa identified R.D. based on her close contact with him and by an earring he wore. Mr. Correa identified him based on his haircut, stature, and body weight. Mr. Correa was one-hundred percent certain of his identification; Ms. Correa was sixty to seventy percent sure of her identification. *See Wilson v. State*, 267 S.W.3d 215, 218 (Tex. App.—Waco 2008, pet. ref'd) ("The trial court could have reasonable inferred from [testimony that the witness was '100 percent sure' of her identification] that Jones identified Wilson on the night in questions with a high level of certainty."). The identification was made by the Correas approximately three hours following R.D.'s emergence from the Medellin home. *See Moore v. State*, 140 S.W.3d 720, 732 (Tex. App.—Austin 2004, pet. ref'd) (holding that two-day time span between criminal act and pretrial identification was not significant enough to bring length of time into issue); *Brown v. State*, 29 S.W.3d 251, 256 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (finding that sixty-seven day time-lapse between criminal act and identification insufficient to assume witness's memory had faded). Considering the totality of the circumstances, we hold the pretrial identification procedure was not unnecessarily suggestive.

Furthermore, assuming *arguendo* the pretrial identification was impermissibly suggestive, we hold the in-court identifications by the Correas were still admissible. As long as the record clearly establishes a witness's prior observation of the defendant was sufficient to serve as an independent origin for the in-court identification, the in-court identification is admissible. *Bradley v. State*, 359 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983)). The Correas both testified their in-court identifications were made based on their own recollections from their encounter with R.D. at the Medellin home. As noted above, both Mr. and Ms. Correa had close encounters with R.D. in the daylight. Mr. and Ms. Correa recognized R.D.'s earrings, and Mr. Correa explained that he recognized R.D.'s facial features and haircut.

## CONCLUSION

Based on the foregoing, we hold the evidence was legally sufficient to support a finding that R.D. committed a burglary of a habitation. We further hold the trial court did not err in refusing to suppress the in-court identifications provided by the Correas. Accordingly, we overrule R.D.'s points of error and affirm the trial court's judgment.

Marialyn Barnard, Justice